NETTIE LOU MORRIS, ADMINISTRATRIX OF FOY L. MORRIS, DECEASED, v.
WINSTON-SALEM SOUTHBOUND RAILWAY COMPANY.

(Filed 3 November, 1965.)

**Railroads § 5—**

Nonsuit held proper in this action for wrongful death resulting when intestate drove into the side of the second engine of a freight train which had been standing at nighttime, blocking the crossing, for some 30 seconds prior to the injury, with its ground lights, its platform light, and cab lights burning.

APPEAL by plaintiff from *Olive, E.J.,* 15 March 1965, Mixed Session of DAVIDSON.

This is an action for wrongful death as the result of injuries sustained by the plaintiff's intestate shortly after midnight on 19 October 1963 when his automobile collided with the second engine of a train of the defendant stopped upon the crossing of the track of the defendant and the highway upon which the deceased was driving. The complaint alleges there were no lights or other warnings to indicate that the crossing was blocked. The answer denies all allegations of negligence on the part of the defendant and pleads contributory negligence as a further defense. From a judgment of nonsuit entered at the close of her evidence the plaintiff appeals.

The evidence as to how the accident occurred may be summarized as follows:

The highway runs east and west, the railroad tracks approximately northwest and southeast. The pickup truck driven by the deceased was headed east upon the highway. The train was headed northwest with the result that the beam of the headlight from its lead engine was at an angle of about 52 degrees to the left of the deceased as he approached the crossing. The highway runs upgrade and straight for about 800 feet as it approaches the crossing from the west, the direction in which the deceased was driving. It levels off at the crossing. Some 330 feet from the crossing there was a sign warning that the railroad was ahead and at the crossing there were the usual cross arm signs indicating a railroad crossing, these being reflectorized. There were street lights and lights in private driveways to the left of the highway and beyond the crossing which, due to the terrain, were considerably higher than the level of the highway. These were illuminated. As the deceased approached the crossing there was a wooded area on his right. On his left there were trees and undergrowth with substantial foliage. He was familiar with this crossing. The weather was clear and the night was dark.

At 12:05 a.m. the train arrived at the crossing. The accident oc-

curred 30 seconds later. The engineer blew the whistle 300 yards from the crossing and again when about 10 or 15 feet from it. The train stopped with the back end of the lead engine still on the highway. There was about six feet of space between the back end of the lead engine and the front end of the second engine at the top, they, of course, being coupled together nearer the ground. The front of the second engine was at the approximate center of the highway. The truck, which was being driven by the deceased on his right side of the highway, struck the step of the second engine.

The train stopped to set off some cars for interchange with the High Point, Thomasville-Denton Railroad, the tracks of the two railroads connecting at this point. The conductor and the brakeman had to get off and throw the switch. The engineer was waiting for the brakes on the box cars to release, whereupon the next move would have been to back off the crossing to the point where the cars would be cut off for the interchange. The train had been standing upon the crossing only about 30 seconds when the truck crashed into the second locomotive.

The surface of the highway was black, as was the lead engine. The second engine was purple with a white stripe running along its side from end to end. On the lead engine the headlight was burning, as were a 100 watt platform light at the head of the engine, two 60 watt lights inside the cab, one on each side, and a 100 watt ground light on each side of the engine near the front, which had a covering over its top deflecting the light toward the ground. The headlight on the second engine was turned off. On this engine the lights which were turned on were the 100 watt ground lights on each side of the engine, the platform light and the two 60 watt cab lights.

The deceased was driving approximately 40 miles per hour. His lights were good and his truck was in good condition. The fireman, observing him approaching the train without slowing down, blew the whistle on the train when the truck was approximately 150 to 200 feet from the crossing and continuously thereafter until the truck crashed head-on into the second engine.

While in the hospital, believing that he was soon to die, the deceased stated that he was driving 40 miles per hour, looking straight ahead, saw no lights, heard no whistle and was on the train before he could do anything about it.

*Walser, Brinkley, Walser & McGirt and DeLapp & Ward for plaintiff appellant.*

*Craige, Brawley, Lucas & Horton and Thomas O. Moore for defendant appellee.*

PER CURIAM. The crossing was well marked and the weather was clear. The train had been stopped upon the crossing only 30 seconds prior to the accident. It had stopped there for the necessary purpose of backing up to set off cars for interchange with another carrier. The engine, with which the truck of the deceased collided, had a white stripe painted along its sides from front to rear. It had lights in its cab and near the ground upon the side struck by the deceased. The lead locomotive had its headlight burning, lights in its cab and lights on its side. The rear of this engine was upon the crossing at the deceased's left. The fireman, observing that the deceased was not slowing down, blew the engine's whistle. There is no evidence that the gap between the two engines above the coupling combined with street lights on the opposite side of the train created an illusion of an open crossing.

The evidence does not disclose actionable negligence by the railroad and judgment of nonsuit was properly entered. *Rose v. R. R.,* 210 N.C. 834, 187 S.E. 857; *Blackwell v. Hawkins,* 207 N.C. 874, 178 S.E. 554; Anno: 84 A.L.R. 2d 813, 824. The reason for the failure of the deceased to see the engine blocking the crossing is left to conjecture.

Affirmed.