WAYNE C. YOUNG v. BALTIMORE AND OHIO RAILROAD COMPANY, a CORPORATION.

(Filed 4 February, 1966.)

**1. Courts § 20—**

In an action to recover for negligent injury inflicted in another state, the law of the state in which the accident occurred governs the rights and duties cast upon the parties by law, and the law of this State governs the procedure.

**2. Trial § 21—**

In passing upon a motion for judgment of nonsuit, the plaintiff's evidence must be taken as true, must be interpreted in the light most favorable to plaintiff, and reasonable inferences favorable to plaintiff must be drawn therefrom.

**3. Railroads § 6—**

Under the law of Ohio, recovery is not allowed for injury resulting from a collision when a vehicle is driven into the side of a train at a grade

crossing in the absence of special circumstances rendering the crossing peculiarly hazardous.

**4. Same—  Evidence of negligence in leaving engine unlighted and unattended, partly blocking crossing, held to take issue of negligence to jury.**

The evidence tended to show that defendant's train, without lights and unattended, was blocking two-thirds of the north lane of the highway, that a steady stream of vehicles with their lights burning continued to travel east over the crossing, that the driver of the tractor-trailer in which plaintiff was riding did not see the engine until some 60 feet from it, when it was too late to avoid collision, causing the injuries in suit. *Held:* The evidence discloses special circumstances rendering the crossing peculiarly hazardous, and therefore the evidence is sufficient to be submitted to the jury on the issue of the railroad's negligence, and does not disclose negligence on the part of the driver of the tractor-trailer insulating as a matter of law the negligence of the railroad.

**5. Automobiles § 50—**

Under Ohio law, the negligence of the driver of a vehicle is not imputed to the co-driver riding therein.

**6. Negligence § 27—**

Nonsuit on the ground of insulating negligence may be granted only when the evidence of plaintiff permits no reasonable conclusion except that the negligence of the third person could not have been reasonably foreseen by defendant.

**7. Negligence § 26—**

Nonsuit may be granted for contributory negligence only when plaintiff's own evidence establishes it as the sole reasonable conclusion.

**8. Automobiles § 49—**

Evidence that plaintiff, a co-driver, was sitting beside the driver and leaning over to put on his boots, that when he raised up he saw defendant's locomotive blocking their lane of travel and cried out a warning, without evidence that he could have seen the danger sooner had he not been engaged in putting on his boots, *held* insufficient to disclose contributory negligence as a matter of law.

**9. Damages § 15;  Torts § 2—**

Each tort-feasor is jointly and severally liable for all injuries which result from an accident of which his negligence is a proximate cause, and where there is evidence of concurring negligence on the part of defendant and a third person, an instruction that plaintiff was entitled to recover compensation for injuries which were the proximate result of negligence on the part of defendant must be held for prejudicial error as permitting allocation of damages in accordance with the negligence of the respective parties.

**10. Damages §§ 2, 15—**

The injured party may recover for all medical expenses actually incurred by or for him, notwithstanding his employer may have paid or provided

for the payment of such expenses, and where there is evidence that plaintiff's hospital expenses were paid out of hospital insurance carried for the benefit of employees, an instruction that plaintiff's right to medical expenses was limited to the actual monetary losses he had suffered, must be held for error.

APPEAL by both plaintiff and defendant from *Brock, S.J.,* 1 March 1965 Civil Session of DAVIE.

The following facts are not controverted:

On 8 January 1962, at approximately 7 p.m., the plaintiff sustained personal injuries when a tractor-trailer, in which he was riding as co-driver, ran into the side of the defendant's locomotive then stopped upon a crossing of the defendant's track and U. S. Highway 40 in the small village of Bachman, Ohio. It was, of course, dark. The tractor-trailer was then being driven by Melvin West. West and the plaintiff were employed by McLean Trucking Company, the owner of the vehicle. They had left Winston-Salem, bound for Chicago early that morning, alternating as drivers. The driver off duty either slept in the sleeping compartment of the vehicle or sat in the seat beside the driver. At the time of the collision, the plaintiff, having awakened from his sleep, was sitting beside the driver and was putting on his boots preparatory to taking over the wheel for another turn as driver. Both drivers had made many other trips over the same route and were familiar with the vicinity. The highway ran from east to west, the railroad track from north to south. Each was level and straight for a considerable distance on either side of the crossing. The highway had one lane of traffic in each direction. It was paved and dry. Signs required by the law of Ohio, notifying of the approach to a railroad crossing, were erected upon the shoulder. The speed limit was 50 miles per hour.

The plaintiff alleges in his complaint that the defendant was negligent in that it caused its locomotive to be stopped on the crossing so that it blocked the plaintiff's right hand lane of the highway at the crossing, allowing it to remain there unattended, without lights and without any signal or notice of its presence upon the crossing, and failed to station a flagman or to place flares or other warning devices so as to notify motorists using the highway of this condition. He alleges that these acts and omissions of the defendant were the proximate cause of the collision and of his injuries. In its answer, the defendant denies negligence by it and alleges that the sole proximate cause of the collision was the negligence of the driver of the tractor-trailer, West, in that he failed to keep a proper lookout, drove at a speed too fast for existing conditions and failed to yield the right of way to the defendant's train. The defendant also pleaded

contributory negligence by the plaintiff as a defense, alleging his own failure to keep a proper lookout and to warn his co-driver.

The defendant offered no evidence. The plaintiff introduced evidence which, in addition to the uncontroverted facts, above stated, and to testimony as to the extent and nature of his injuries, tended to show the following:

The tractor-trailer was in good mechanical condition. At the time of the collision, its headlights were burning on the low-angle beam because of oncoming traffic on the highway. It was traveling between 40 and 45 miles per hour. The surface of the highway was grayish black. The locomotive was of the same color with no bright colors on it. There were no lights on the locomotive and no sound was heard coming from it. The night was cloudy. Several automobiles were meeting the tractor-trailer with their headlights burning. These were approaching the crossing from the opposite direction, their half of the crossing being unobstructed. The tractor-trailer had been meeting a steady stream of traffic. There was no interruption in it. The driver, West, first saw the locomotive on his portion of the crossing when the tractor-trailer was from 60 to 75 feet from it. At the same time the plaintiff cried, "Watch out!" The front of the locomotive, which was standing still, projected over approximately two-thirds of the right (north) side of the crossing. West immediately applied all of the brakes of the tractor-trailer but nevertheless collided with the left front of the locomotive. Young was pinned in the seat of the tractor-trailer cab, being removed from it some 30 minutes after the collision. After the collision the lights of the locomotive were turned on. No one was observed around the locomotive until after the collision. There was no flagman and no lighted signals of any kind were observed. A regulation of the Interstate Commerce Commission requires such motor vehicle, when approaching a railroad grade crossing, to be driven at a speed which will permit it to be stopped before reaching the nearest rail of the crossing, and provides that the vehicle shall not be driven upon the crossing until due caution has been taken to ascertain that the course is clear. At about 400 feet from the crossing the plaintiff leaned over and began putting on his boots. When about 75 feet from the crossing he looked up, saw the engine and cried, "Watch out!"

The issues submitted to the jury and the verdict were as follows:

"1. Was the plaintiff injured by the negligence of the defendant, as alleged in the Complaint?

"Answer: Yes.

"2. What amount of damages, if any, is the plaintiff entitled to recover of the defendant?

"Answer: $3,500."

From a judgment in accordance with the verdict both parties appealed. The defendant's only assignments of error were with reference to the denial of its motion for judgment of nonsuit. The plaintiff's assignments of error relate to various portions of the charge and alleged omissions therefrom.

*William E. Hall and Lafayette Williams for plaintiff.*

*Womble, Carlyle, Sandridge & Rice by W. P. Sandridge and Grady Barnhill, Jr., for defendant.*

Lake, J.

### Defendant's Appeal

Since the accident out of which this action arose occurred in Ohio, the law of Ohio governs the rights and duties of the parties. *Jones v. Elevator Co.,* 234 N.C. 512, 67 S.E. 2d 492; *Russ v. R. R.,* 220 N.C. 715, 18 S.E. 2d 130. The law of North Carolina governs the procedure to be followed in the trial of the action in the courts of this State.

In passing upon a motion for judgment of nonsuit the plaintiff's evidence must be taken to be true, must be interpreted in the light most favorable to the plaintiff and all reasonable inferences favorable to him must be drawn therefrom. *Ammons v. Britt,* 259 N.C. 740, 131 S.E. 2d 349; *Coleman v. Colonial Stores, Inc.,* 259 N.C. 241, 130 S.E. 2d 338.

The Supreme Court of Ohio has held in *Capelle v. B & O Railway,* 136 Oh. St. 203, 24 N.E. 2d 822, that a passenger in a motor vehicle which is driven into "the side of a train standing or moving over a grade crossing cannot in the absence of special circumstances rendering the crossing peculiarly hazardous" recover from the railroad for injuries received. In *Reed v. Erie R. Co.,* 134 Oh. St. 31, 15 N.E. 2d 637, it was said that a railroad is not negligent by reason of its failure to light its train or to give a signal of its presence on the crossing because "when the train has arrived and is in occupation of the crossing, it affords an effective danger signal to approaching travelers." This is the general rule in other jurisdictions, 44 Am. Jur., Railroads, § 501, and is in accord with the law of this State. See: *Morris v. Railroad,* 265 N.C. 537, 144 S.E. 2d 598.

Neither the plaintiff nor the defendant has cited to us any decision of the Ohio Court in the case in which an unlighted train, or

portion thereof, was left standing upon a crossing in such a way that it covered only a part of the crossing and we know of no such decision in Ohio. As to such a situation the decisions from other states are in conflict. In *Peagler v. A.C.L. R. R. Co.,* 234 S.C. 140, 107 S.E. 2d 15, 84 A.L.R. 2d 794, the Supreme Court of South Carolina affirmed a judgment in favor of a motorist who collided in the nighttime with an empty, black flat car standing on a crossing, street lights and the headlights of an oncoming car on the opposite side of the crossing giving the driver the illusion of an open crossing. To the same effect are the decisions in *Hawkins v. Missouri Pac. R. Co.,* 217 Ark. 42, 228 S.E. 2d 642; *Ft. Worth & D.C. R. Co. v. Looney* (Tex. Civ. App.), 241 S.W. 2d 322; *Godwin v. Camp Mfg. Co.,* 183 Va. 528, 32 S.E. 2d 674. The contrary view is adopted in *Allinson v. M.K.P. Railroad* (Mo. App.), 347 S.W. 2d 902; *Lowden v. Bowles,* 188 Okla. 35, 105 P. 2d 1061.

In the present case the plaintiff's evidence, taken in the light most favorable to him, is sufficient to support a finding that there was no light on the locomotive, that no signal or other indication of its presence upon the crossing was given and that it was unattended by a train crew. It did not extend all the way over the crossing but projected only about two-thirds of the way from the plaintiff's right side of the crossing toward the center thereof. At the same time a stream of cars, with headlights shining, approached from the other side of the crossing and some of them proceeded over the crossing toward the vehicle in which the plaintiff was riding, their portion of the crossing not being obstructed. Under these circumstances, the driver of the vehicle in which the plaintiff was riding did not observe the unlighted locomotive partially blocking his half of the crossing until he was some 60 feet from it.

The steadily moving stream of traffic meeting the plaintiff's vehicle created an illusion of an open crossing. This illusion was made possible by the act of the defendant in stopping its unlighted engine so that only a portion of the plaintiff's half of the crossing was blocked. We think these were "special circumstances rendering the crossing peculiarly hazardous," within the rule announced by the Ohio Court in the *Capelle* case, *supra.* While there is no indication in the record as to how long the unlighted locomotive had remained in this position, we think it a reasonable inference that it arrived upon the crossing only a short time before the collision, when it was dark and automobiles with headlights burning were moving upon the highway toward the crossing. Thus, the hazardous circumstances were, or should have been, known to the defendant. Under these conditions the rule of the *Peagler* case, *supra,* appears to us to be

sound and we have no reason to doubt that it states the rule which would be applied to such a situation by the Ohio Court.

The evidence was, therefore, sufficient to support a finding that the defendant was negligent in leaving its unlighted engine upon the crossing at this time and in this position.

Even if the driver of the tractor-trailer be deemed negligent under these circumstances, his negligence can not be imputed to the plaintiff under the law of Ohio. *Parton v. Weilnau,* 169 Oh. St. 145, 158 N.E. 2d 719. The defendant contends that West was so negligent and that his negligence intervened so as to insulate the negligence of the defendant, if any. A judgment of nonsuit on the ground of intervening negligence of a third person may be granted only when the evidence of the plaintiff permits no conclusion except that such third person was negligent and that his act or omission could not reasonably have been foreseen by the negligent defendant. *Bryant v. Woodlief,* 252 N.C. 488, 114 S.E. 2d 241; *Moore v. Plymouth,* 249 N.C. 423, 106 S.E. 2d 695. Here, the evidence does not compel such a conclusion and this question was properly submitted by the court to the jury for consideration in connection with the first issue.

Similarly, a nonsuit may be granted on the ground of the plaintiff's own contributory negligence only when the evidence of the plaintiff admits of no other conclusion. *Short v. Chapman,* 261 N.C. 674, 136 S.E. 2d 40; *Pruett v. Inman,* 252 N.C. 520, 114 S.E. 2d 360. Here, the plaintiff was riding with a driver whom he knew to be well acquainted with this vicinity. In preparation for taking over the duties of driver, the plaintiff was in the process of putting on his boots and thus was leaning over and looking down. As soon as he saw the locomotive he cried out a warning. There is no evidence that he could have seen it sooner had he not been engaged in putting on his boots. This is not sufficient evidence of contributory negligence by the plaintiff to justify a judgment of nonsuit.

We, therefore, hold upon the defendant's appeal that there was no error in the denial of its motion for judgment as of nonsuit.

### PLAINTIFF'S APPEAL.

The plaintiff's assignments of error Nos. 1 and 2 relate to portions of the instructions of the court to the jury with reference to the first issue, including the doctrine of intervening negligence of the third party. Since the jury answered this issue in favor of the plaintiff, it is not necessary for us to consider these assignments, for if there was error in these portions of the charge the plaintiff has not been prejudiced thereby. As was said by Moore, J., in *Fleming v. Drye,* 253 N.C. 545, 549, 117 S.E. 2d 416:

"Error in a charge on an issue is harmless if the jury answers the issue in favor of the appellant. *Lookabill v. Regan,* 247 N.C. 199, 202, 100 S.E. 2d 521; *Scenic Stages v. Lowther,* 233 N.C. 555, 557, 64 S.E. 2d 846. We do not indulge the presumption that the jury applied the questioned instructions to issues other than those directed by the court."

Upon the issue of damages, the court charged as follows:

"Upon this second question relating to personal injury, the rule is that where a person is entitled to recover for personal injuries, he is entitled to recover one compensation in a lump sum for all injuries, past, present and future, that you find to be the direct, natural and proximate result of any negligent conduct *on the part of the defendant.*" [Emphasis ours.]

This phrase, "proximate result of any negligent conduct on the part of the defendant," was repeated on three other occasions in the charge relating to the issue of damages and there was no qualifying or explanatory language in the charge.

In connection with the first issue, the court charged the jury as to the law of intervening negligence. In answering the first issue in favor of the plaintiff, the jury obviously rejected the defendant's contention that the negligence, if any, of the driver, West, was an intervening, insulating cause. However, we cannot determine from its verdict whether the jury found that West was not negligent or believed that West was negligent but his negligence was a concurring, not an intervening, and, therefore, not an insulating, cause of the plaintiff's injuries.

"The mere fact that another is also negligent and the negligence of the two results in injury to the plaintiff does not relieve either." *Green v. Tile Co.,* 263 N.C. 503, 139 S.E. 2d 538; *Jones v. Horton,* 264 N.C. 549, 554, 142 S.E. 2d 351. This Court has said many times: "There may be two or more proximate causes of an injury. These may originate from separate and distinct sources or agencies operating independently of each other, yet if they join and concur in producing the result complained of, the author of each cause would be liable for the damages inflicted, and action may be brought against any one or all as joint tort-feasors." *Barber v. Wooten,* 234 N.C. 107, 66 S.E. 2d 690. See also: *Rouse v. Jones,* 254 N.C. 575, 119 S.E. 2d 628; *Tillman v. Bellamy,* 242 N.C. 201, 87 S.E. 2d 253.

The learned judge below evidently overlooked the possibility that the jury might answer the first issue in the plaintiff's favor and nevertheless believe that there was negligence on the part of West. His instruction that they were to answer the second issue in an

amount which would compensate for the injuries which were the result of "negligent conduct on the part of the defendant" may well have misled the jury. They may have understood from the instruction that they were to distinguish between damages for injuries caused by the negligence of the defendant and those caused by the negligence of West, if any. Thus, they may have answered this issue in an amount less than they would have found had they understood that they were to return a verdict in an amount which would compensate the plaintiff for all of his injuries resulting from the collision.

The court also instructed the jury upon this issue with reference to his medical expenses as follows:

"In this case the things you may consider in determining what amount you will award to the plaintiff, if you award him anything, are *actual monetary losses he has had* from medical expenses * * *." [Emphasis ours.]

There was testimony that the plaintiff's medical expenses had been paid by his employer as the result of hospital insurance carried for the benefit of its employees. In the light of this testimony, the foregoing charge may well have led the jury to believe that no amount was to be included in its verdict on account of medical expenses unless paid by the plaintiff himself.

The correct rule is stated in 22 Am. Jur. 2d, Damages, § 207, as follows:

"[T]he plaintiff's recovery will not be reduced by the fact that the medical expenses were paid by some source collateral to the defendant, such as by a beneficial society, by members of the plaintiff's family, by the plaintiff's employer, or by an insurance company."

In *Roth v. Chatlos,* 97 Conn. 282, 116 Atl. 332, 22 A.L.R. 1554, it is said:

"The majority rule of the cases is that an injured person is entitled to recover as damages for reasonable medical, hospital, or nursing services rendered him, whether these are rendered him gratuitously or paid for by his employer."

As to the effect of payment for such services by the employer where the Workmen's Compensation Act applies, see: G.S. 97-10.2(e).

The opinion in *Tart v. Register,* 257 N.C. 161, 125 S.E. 2d 754, expressly states that the decision there is limited to the situation in which the plaintiff seeks double recovery for medical expenses,

first on the ground of the defendant's liability for negligence, and second on the ground that the defendant's automobile liability insurance policy also provides medical payments coverage. Our decision there does not prevent recovery for medical expenses actually incurred by or for an injured person on the ground that his employer has paid or provided for the payment of those expenses.

These inadvertent errors in the instructions upon the issues of damages were substantially prejudicial to the plaintiff and he is entitled to a new trial.

As to the defendant's appeal:  Affirmed.
As to the plaintiff's appeal:  New trial.