HERBERT DEAN BOUDREAU v. MILO BAUGHMAN AND MILO BAUGHMAN DESIGN, INC.

No. 409PA87

(Filed 2 June 1988)

1. **Courts § 21— conflict of laws—substantial rights governed by lex loci—procedural rights governed by lex fori**

    Matters affecting the substantial rights of the parties are determined by lex loci, the law of the situs of the claim, and remedial or procedural rights are determined by lex fori, the law of the forum; thus, under North Carolina law when the injury giving rise to a negligence or strict liability claim occurs in another state, the law of that state governs resolution of the substantive issues in the controversy.

2. **Courts § 21.6; Uniform Commercial Code § 3— products liability action—transactions bearing "appropriate relation" to North Carolina—"appropriate relation" defined—injury occurring in Florida—Florida law applicable**

    Plaintiff's breach of warranty claims in this products liability action are governed by the U.C.C. which provides that North Carolina law will be applied to "transactions bearing an appropriate relation to this State," and "appropriate relation" is interpreted to mean "most significant relationship"; therefore, Florida—the place of sale, distribution, delivery, and use of the chair in question, as well as the place of injury—was the state with the most significant relationship to the warranty claims and thus the state whose law applied. N.C.G.S. § 25-1-105(1) (1986).

3. **Limitation of Actions § 1— statutes of limitation and statutes of repose—distinction**

    Statutes of limitation serve to limit the time within which an action may be commenced after the cause of action has accrued, while statutes of repose set a fixed time limit beyond which a plaintiff's claim will not be recognized, and the distinction between statutes of limitation and statutes of repose corresponds to the distinction between procedural and substantive laws.

4. **Courts § 21.5; Limitation of Actions § 4.1— statute of repose as substantive provision—Florida law applicable to tort claim—claim not time barred**

    Statutes of repose will be treated as substantive provisions for choice of law purposes, and the applicable statute of repose thus will be determined by lex loci, the law of the situs of the claim; therefore, the 12-year Florida statute of repose applied to plaintiff's products liability claims where the sale, delivery and use of the product and the injury itself took place in Florida, and plaintiff's filing of the claims just over six years after the initial purchase of the product was timely.

5. **Negligence § 29.3— design of chair—injury on chrome edge—foreseeability—intervening negligence of manufacturer—summary judgment improper**

    In plaintiff's action to recover for injuries sustained when he cut his foot on a chrome-plated tub-style chair designed by defendants, the record

presented genuine issues of material fact as to whether defendants breached the duty of reasonable care by specifying the use of chrome veneer, which is known to have a sharp edge, but failing to include some type of edge guard in the chair design and whether dangerously sharp edges were a reasonably foreseeable consequence of a design lacking an edge guard so that defendant's negligence in the design was not insulated by the manufacturer's negligence.

**6. Sales § 22— design of chair—injury to user—strict liability—jury questions**

In an action to recover for injuries sustained by plaintiff when he cut his foot on the base of a chrome-plated tub-style swivel chair designed by defendants, the forecast of evidence was sufficient to raise jury questions on the elements of strict liability where plaintiff was required to establish defendants' relationship to the chair, its defective condition, the existence of a causal connection between the chair's condition and plaintiff's injuries, and that the defect existed both at the time of the injury and at the time the product left the hands of the manufacturer or seller; the individual defendant admitted designing the chair but contended that the sharp edge on the chair was a manufacturing rather than a design defect; lapse of time between the purchase of the chair and the accident and the manufacturer's record of safety were simply circumstances to be considered in determining whether the product was defective when it left the control of the manufacturer or distributor; and it was reasonable to infer that the type of defect alleged, a uniform razor-sharpness around the entire circumference of the tub edge, would not have arisen from use of the chair.

**7. Sales § 17.2— injury on allegedly defective chair—no privity between designer and user—summary judgment on breach of implied warranty claim proper**

Under Florida law where plaintiff has been injured by an allegedly defective product but has no contractual relationship with defendants, he may pursue a strict liability cause of action if appropriate, but absent privity the vehicle of implied warranty is not available to him; therefore, summary judgment was properly granted for defendants on plaintiff's claims for breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose.

Justice WEBB dissenting.

ON plaintiff's petition for discretionary review of a decision of the Court of Appeals, 86 N.C. App. 165, 356 S.E. 2d 907 (1987), affirming summary judgment in favor of defendants entered by *DeRamus, J.,* at the 8 September 1986 session of Superior Court, FORSYTH County. Heard in the Supreme Court 10 February 1988.

*Faison, Brown, Fletcher & Brough, by O. William Faison, Timothy C. Barber, and Gary R. Poole, for plaintiff-appellant.*

*Hutchins, Tyndall, Doughton & Moore, by Richard Tyndall and H. Lee Davis, Jr., for defendant-appellees.*

MARTIN, Justice.

The sole issue for review on this appeal is whether the trial court properly granted defendants' motion for summary judgment. As a preliminary matter, however, this case poses a choice of law dilemma. We must determine which statute of repose applies to this products liability action: that of North Carolina, the forum state, or that of Florida, the state where the injury occurred. We hold that the Florida statute of repose applies and that summary judgment was inappropriately entered on plaintiff's negligence and strict liability claims.

Plaintiff brought this action on 5 March 1985, naming as defendant in both an individual and a corporate capacity the North Carolina designer of a chrome-plated, tub-style chair designated as model number 1183. The complaint alleged that plaintiff, a resident of Massachusetts, had injured his foot on the metal surface of the chair in question while visiting friends in Florida. Plaintiff claimed compensatory and punitive damages based on theories of negligent design, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and strict liability for injecting an inherently dangerous product into the stream of commerce.

Defendants' answer denied the material allegations of the complaint and asserted defenses of, inter alia, contributory negligence, independent negligence of the chair's manufacturer, accord and satisfaction, and lack of personal jurisdiction. On 24 June 1986, defendants moved for summary judgment. On 14 July 1986, defendants were permitted to amend their answer to include a further defense based on North Carolina statutes of repose. Thereafter the trial judge granted summary judgment in defendants' favor. The Court of Appeals affirmed.

Plaintiff contends that the applicable statute of repose is Florida Statutes § 95.031(2), which provides as follows:

Actions for products liability and fraud under s. 95.11(3) must be begun within the period prescribed in this chapter, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, instead of running from any date prescribed elsewhere in s. 95.11(3), but in any

event within *12 years after the date of delivery of the com-pleted product to its original purchaser* or within 12 years after the date of the commission of the alleged fraud, regard-less of the date the defect in the product or the fraud was or should have been discovered.[1]

(Emphasis added.)

Defendants, on the other hand, maintain that N.C.G.S. § 1-50(6) controls. Section 1-50(6) provides:

No action for the recovery of damages for personal injury, death or damage to property based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than *six years after the date of initial purchase* for use or consumption.

(Emphasis added.)

The record indicates that defendants sold the design for model number 1183 to Thayer-Coggin, Inc., a North Carolina fur-niture manufacturer, in 1967. Thayer-Coggin manufactured the chair and sold it to a furniture store in Florida, which in turn sold it to plaintiff's Floridian hosts on 26 January 1979. Plaintiff's in-jury occurred on 7 March 1982 and the complaint was filed on 5 March 1985. Applying these dates, plaintiff brought the action within the twelve-year period prescribed by the Florida statute but not within the six-year period prescribed by N.C.G.S. § 1-50(6). Defendants therefore contend that plaintiff's action is time-barred under North Carolina law.[2]

---

1. In response to confusion about its constitutionality, *see Battilla v. Allis Chalmers Mfg. Co.*, 392 So. 2d 874 (Fla. 1980) (holding statute of repose unconstitu-tional); *Pullum v. Cincinnati, Inc.*, 476 So. 2d 657 (Fla. 1985), *appeal dismissed*, 475 U.S. 1114, 90 L.Ed. 2d 174 (1986) (overruling *Battilla* and reconstitutionalizing statute of repose), Florida Statutes § 95.031(2) was recently amended to delete the twelve-year period prescribed for products liability actions. *See* 1986 Fla. Sess. Law Serv. 86-271 (West). As there is no dispute that plaintiff filed his claim well within the twelve-year period, we need not concern ourselves with the implications of this change upon  defendants' right to assert the statute as an affirmative defense.

2. Defendants also contend that the action would be time-barred by N.C.G.S. § 1-52(16), which provides that causes of action for personal injury or property damage "shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. Provided that no cause of action shall accrue

Our choice of law analysis is somewhat complicated by the fact that plaintiff raises four distinct theories of recovery in four separate counts of the complaint. We first address plaintiff's claims of negligence and strict liability.

[1]　Our traditional conflict of laws rule is that matters affecting the substantial rights of the parties are determined by lex loci, the law of the situs of the claim, and remedial or procedural rights are determined by lex fori, the law of the forum. *Charnock v. Taylor*, 223 N.C. 360, 26 S.E. 2d 911 (1943). For actions sounding in tort, the state where the injury occurred is considered the situs of the claim. Thus, under North Carolina law, when the injury giving rise to a negligence or strict liability claim occurs in another state, the law of that state governs resolution of the substantive issues in the controversy. *Leonard v. Johns-Manville Sales Corp.*, 309 N.C. 91, 305 S.E. 2d 528 (1983); *Bernick v. Jurden*, 306 N.C. 435, 293 S.E. 2d 405 (1982); *Howard v. Howard*, 200 N.C. 574, 158 S.E. 101 (1931); *Williams v. General Motors Corp.*, 19 N.C. App. 337, 198 S.E. 2d 766, *cert. denied*, 284 N.C. 258, 200 S.E. 2d 659 (1973).

This Court has consistently adhered to the lex loci rule in tort actions. Smith, *Choice of Law in the United States*, 38 Hastings L.J. 1041 (1987); Wurfel, *Choice of Law Rules in North Carolina*, 48 N.C.L. Rev. 243 (1970); *see, e.g., Henry v. Henry*, 291 N.C. 156, 229 S.E. 2d 158 (1976); *Young v. R.R.*, 266 N.C. 458, 146 S.E. 2d 441 (1966); *Petrea v. Tank Lines*, 264 N.C. 230, 141 S.E. 2d 278 (1965); *Frisbee v. West*, 260 N.C. 269, 132 S.E. 2d 609 (1963);

---

more than 10 years from the last act or omission of the defendant giving rise to the cause of action."

We need not consider the effect of the ten-year period prescribed by section 1-52(16). This section replaced N.C.G.S. § 1-15(b) (repealed by 1979 N.C. Sess. Laws ch. 654, § 3, effective 1 October 1979) and its primary purpose appears to have been the adoption of the "discovery" rule. *Black v. Littlejohn*, 312 N.C. 626, 325 S.E. 2d 469 (1985); Note, *Repose for Manufacturers: Six Year Statutory Bar to Products Liability Actions Upheld—Tetterton v. Long Manufacturing Co.*, 64 N.C.L. Rev. 1157, n.7 (1986). That is, it was intended to apply to plaintiffs with latent injuries. *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 329 S.E. 2d 350 (1985); *Raftery v. Construction Co.*, 291 N.C. 180, 230 S.E. 2d 405 (1976); *see also Barwick v. Celotex Corp.*, 736 F. 2d 946 (4th Cir. 1984). It is undisputed that plaintiff was aware of his injury as soon as it occurred. Thus the statute is inapplicable on the facts of this case. Our analysis will deal only with the statute of repose contained in section 1-50(6).

*Shaw v. Lee*, 258 N.C. 609, 129 S.E. 2d 288 (1963). We note that this continues to be the majority rule in the United States. Smith, *Choice of Law in the United States*, 38 Hastings L.J. 1041, app. at 1172-74; Kay, *Theory into Practice: Choice of Law in the Courts*, 34 Mercer L. Rev. 521, 582 & app. at 591-92 (1983). We see no reason to abandon this well-settled rule at this time. It is an objective and convenient approach which continues to afford certainty, uniformity, and predictability of outcome in choice of law decisions. We hold that the substantive law of Florida applies to plaintiff's negligence and strict liability claims.

[2] We next consider the choice of law question with respect to plaintiff's breach of warranty claims. A warranty, express or implied, is contractual in nature. *Wyatt v. Equipment Co.*, 253 N.C. 355, 117 S.E. 2d 21 (1960). Traditionally, under the lex loci rule, the substantive features of warranty claims were controlled by the law of the state where the contract was made or, in certain instances, by the law of the state of performance. *Bernick v. Jurden*, 306 N.C. 435, 293 S.E. 2d 405. However, actions for breach of implied warranty are now governed by the Uniform Commercial Code, adopted in North Carolina in 1965 as chapter 25 of the General Statutes. The Uniform Commercial Code applies to warranty claims in products liability actions. *See Morrison v. Sears, Roebuck & Co.*, 319 N.C. 298, 354 S.E. 2d 495 (1987); *Bernick v. Jurden*, 306 N.C. 435, 293 S.E. 2d 405; *Smith v. Cessna Aircraft Co.*, 571 F. Supp. 433 (M.D.N.C. 1983); Freedman, *Products Liability under the Uniform Commercial Code*, 10 Prac. Law 49, 50 (No. 4, 1964).

The Uniform Commercial Code is generally in accord with prior North Carolina law on the subject of warranties. *See* N.C.G.S., North Carolina Comment, introduction to art. 2, ch. 25 (1986). However, the Code provides its own choice of law rule, modifying the traditional place-of-contract-or-performance rule previously applied in this state. *Bernick v. Jurden*, 306 N.C. 435, 293 S.E. 2d 405. The Code provision states that, in the absence of an agreement between the parties, North Carolina law will be applied to "transactions bearing an appropriate relation to this State." N.C.G.S. § 25-1-105(1) (1986). The Code is silent on the meaning of the term "appropriate relation," leaving its interpretation to judicial decision. *See* N.C.G.S. § 25-1-105 Official Comment.

This Court has yet to define the term. We have therefore consulted decisions in other jurisdictions for guidance.

Our research reveals that some jurisdictions have interpreted the "appropriate relation" provision as requiring the application of forum law whenever the forum itself has significant contact with the case. *See* Siegel, *The U.C.C. and Choice of Law: Forum Choice or Forum Law?*, 21 Am. U.L. Rev. 494, 496 n.2 (1972); Note, *Conflicts of Laws and the "Appropriate Relation" Test of Section 1-105 of the Uniform Commercial Code*, 40 Geo. Wash. L. Rev. 797, 803 n.29 (1971-72).

This approach comports with a very literal-minded reading of the Code, but such an interpretation is at best outmoded. The language of the Code's choice of law provision was originally intended to encourage the application of forum law in those jurisdictions which had enacted the Code, thereby assuring that the Code would govern the transaction at issue when a non-Code jurisdiction was also involved. *See* Nordstrom & Ramerman, *The Uniform Commercial Code and the Choice of Law*, 1969 Duke L.J. 623; Weintraub, *Choice of Law for Products Liability: The Impact of the Uniform Commercial Code and Recent Developments in Conflicts Analysis*, 44 Tex. L. Rev. 1429 (1966). The drafters of the provision did not foresee the widespread enactment of the Code throughout the country. With all but one state having enacted the Code, a strictly forum-oriented choice of law rule is no longer necessary to ensure application of the Code in accordance with the intentions of the drafters. *Id.* Moreover, such an approach is likely to foster forum shopping. *United Overseas Bank v. Veneers, Inc.*, 375 F. Supp. 596 (D. Md. 1974). For these reasons we reject the forum-oriented approach.

Other jurisdictions interpret the appropriate relation test as an invitation for the forum state to use its standard choice of law rules. *See Barclays Discount Bank Ltd. v. Bogharian Bros.*, 568 F. Supp. 1116 (C.D. Cal. 1983), *rev'd on other grounds*, 743 F. 2d 722 (9th Cir. 1984); *Golden Plains Feedlot v. Great Western Sugar Co.*, 588 F. Supp. 985 (W.D.S.D. 1984); *Travenol Laboratories, Inc. v. Zotal, Ltd.*, 394 Mass. 95, 474 N.E. 2d 1070 (1985); Siegel, *The U.C.C. and Choice of Law: Forum Choice or Forum Law?*, 21 Am. U.L. Rev. 494, 496 n.3 (1972); Note, *Conflicts of Laws and the "Appropriate Relation" Test of Section 1-105 of the Uniform Commer-*

*cial Code*, 40 Geo. Wash. L. Rev. 797, 802-03 n.28 (1971-72). We reject this view. The North Carolina Comment to N.C.G.S. § 25-1-105 indicates that the enactment of the section was intended to *change* this state's rigid choice of law rules with respect to transactions under the Uniform Commercial Code. *Bernick v. Jurden*, 306 N.C. 435, 293 S.E. 2d 405.

Finally, many jurisdictions hold that the appropriate relation test is essentially the same as modern "interest analysis" or "grouping of contacts," which requires the forum to determine which state has the most significant relationship to the case. *See, e.g., Simmons v. American Mut. Liability Ins. Co.*, 433 F. Supp. 747 (S.D. Ala. 1976), *aff'd*, 560 F. 2d 1021 (5th Cir. 1977); *Landmark Land Co. v. Sprague*, 529 F. Supp. 971 (S.D.N.Y. 1981), *rev'd on other grounds*, 701 F. 2d 1065 (2d Cir. 1983); *General Electric Credit Corp. v. R.A. Heintz Const. Co.*, 302 F. Supp. 958 (D. Or. 1969); *Tucker v. Capitol Machine, Inc.*, 307 F. Supp. 291 (M.D. Pa. 1969); *P & E Elec., Inc. v. Utility Supply of America*, 655 F. Supp. 89 (M.D. Tenn. 1986); *Martin v. Julius Dierck Equipment Co.*, 52 A.D. 2d 463, 384 N.Y.S. 2d 479 (App. Div. 2d 1976), *aff'd*, 43 N.Y. 2d 583, 374 N.E. 2d 97, 403 N.Y.S. 2d 185 (1978); *Collins Radio Co. of Dallas v. Bell*, 623 P. 2d 1039 (Okla. App. 1980); *Baffin Land Corp. v. Monticello Motor Inn*, 70 Wash. 2d 893, 425 P. 2d 623 (1967); *Wilcox v. Wilcox*, 26 Wis. 2d 617, 133 N.W. 2d 408 (1965). This approach is most consistent with N.C.G.S. § 25-1-105 Official Comment 3, which seems to contemplate a comparison of "significant contacts" among jurisdictions connected to the case, and the North Carolina Comment, which contemplates a shift away from rigid rules toward a more flexible analysis. We therefore interpret "appropriate relation" to mean "most significant relationship."

Applying this analysis to the case at bar, we find Florida—the place of sale, distribution, delivery, and use of the product, as well as the place of injury—to be the state with the most significant relationship to the warranty claim.

Commentators have suggested that the law of the place of distribution should be supreme in products liability cases. Kozyris, *Interest Analysis Facing Its Critics—And, Incidentally, What Should Be Done About Choice of Law for Products Liability?*, 46 Ohio St. L.J. 569 (1985). This is particularly true with

respect to breach of warranty claims. *See Owens-Corning Fiberglas v. Sonic Dev. Corp.*, 546 F. Supp. 533 (D. Kan. 1982) (if any warranty existed, it was breached in state of delivery and use). A state's interest in enforcing warranties involves protection of its citizens from commercial movement of defective goods into that state. *Oresman v. G.D. Searle & Co.*, 321 F. Supp. 449 (D.R.I. 1971). The state in which a sales contract is consummated has a significant interest in applying the social and economic policies embodied in its own law of warranty. *Quadrini v. Sikorsky Aircraft Division, Etc.*, 425 F. Supp. 81 (D. Conn. 1977).

Cases holding that the state where the sale and/or injury took place had the most significant relationship to the products liability action include the following: *Wayne v. Tennessee Valley Authority*, 730 F. 2d 392 (5th Cir. 1984), *cert. denied*, 469 U.S. 1159, 83 L.Ed. 2d 922 (1985) (state of injury, sale, and delivery more interested than state of manufacture); *Bilancia v. General Motors Corp.*, 538 F. 2d 621 (4th Cir. 1976) (law of state where injury occurred has such an appropriate relation as to be controlling); *Gates Rubber Company v. USM Corporation*, 351 F. Supp. 329 (S.D. Ill. 1972), *rev'd on other grounds*, 508 F. 2d 603 (7th Cir. 1975) (state of injury, delivery, and use of product more interested than state of manufacture); *Jackson v. National Semi-Conducter Data Checker*, 660 F. Supp. 65 (S.D. Miss. 1986) (state of injury and sale had most significant contacts); *Armstrong Cork Co. v. Drott Mfg. Co.*, 433 F. Supp. 413 (E.D. Pa. 1977) (state of sale and delivery is where contacts most centered and is most appropriate as to breach of warranty); *Martin v. Julius Dierck Equipment Co.*, 52 A.D. 2d 463, 384 N.Y.S. 2d 479 (App. Div. 2d 1976) (state of injury and use of product more interested than state of manufacture).

[3] Having determined that the substantive law of Florida will apply to plaintiff's claims, we now consider whether the statutes of repose at issue are substantive or procedural in nature. The question of what is procedure and what is substance is determined by the law of the forum state. *Williams v. Riley*, 56 N.C. App. 427, 289 S.E. 2d 102 (1982); 16 Am. Jur. 2d *Conflict of Laws* § 3 (1979).

The term "statute of repose" is used to distinguish ordinary statutes of limitation from those that begin to run at a time

unrelated to the traditional accrual of the cause of action. *Bolick v. American Barmag Corp.*, 306 N.C. 364, 293 S.E. 2d 415 (1982). We discussed this distinction in *Trustees of Rowan Tech. v. Hammond Assoc.*:

> Statutes of limitation are generally seen as running from the time of injury, or discovery of the injury in cases where that is difficult to detect. They serve to limit the time within which an action may be commenced after the cause of action has accrued. Statutes of repose, on the other hand, create time limitations which are not measured from the date of injury. These time limitations often run from defendant's last act giving rise to the claim or from substantial completion of some service rendered by defendant.

313 N.C. 230, 234 n.3, 328 S.E. 2d 274, 276-77 n.3 (1985).

Statutes such as N.C.G.S. § 1-50(6) and Florida Statutes § 95.031(2) have been denominated statutes of repose because they set a fixed limit after the time of the product's manufacture, sale, or delivery beyond which a plaintiff's claim will not be recognized. *Bolick v. American Barmag Corp.*, 306 N.C. 364, 293 S.E. 2d 415; *Lamb v. Volkswagenwerk Aktiengesellschaft*, 631 F. Supp. 1144 (S.D. Fla. 1986), *aff'd*, 835 F. 2d 1369 (11th Cir. 1988). "[T]he repose serves as an unyielding and absolute barrier that prevents a plaintiff's right of action even before his cause of action may accrue." *Black v. Littlejohn*, 312 N.C. 626, 633, 325 S.E. 2d 469, 475 (1985).

The distinction between statutes of limitation and statutes of repose corresponds to the distinction between procedural and substantive laws. *Goad v. Celotex Corp.*, 831 F. 2d 508 (4th Cir. 1987).

Ordinary statutes of limitation are clearly procedural, affecting only the remedy directly and not the right to recover. *See Williams v. Thompson*, 227 N.C. 166, 41 S.E. 2d 359 (1947); *Sayer v. Henderson*, 225 N.C. 642, 35 S.E. 2d 875 (1945). The statute of repose, on the other hand, acts as a condition precedent to the action itself. *Bolick v. American Barmag Corp.*, 306 N.C. 364, 293 S.E. 2d 415. Unlike a limitation provision which merely makes a claim unenforceable, a condition precedent establishes a time period in which suit must be brought in order for the cause of ac-

tion to be recognized. If the action is not brought within the specified period, the plaintiff "literally has *no* cause of action. The harm that has been done is *damnum absque injuria*—a wrong for which the law affords no redress." *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 199, 293 A. 2d 662, 667 (1972). For this reason we have previously characterized the statute of repose as a substantive definition of rights rather than a procedural limitation on the remedy used to enforce rights. *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 302 S.E. 2d 868 (1983); *Bolick v. American Barmag Corp.*, 306 N.C. 364, 293 S.E. 2d 415.

This characterization holds true in the context of choice of law. When commencement of an action within a specified period is a condition precedent to relief, "the limitation period is considered to be so tied up with the underlying right that for choice of law purposes, the limitation clause is treated as a 'substantive' rule of law." *Chartener v. Rice*, 270 F. Supp. 432, 436 (E.D.N.Y. 1967).

The overwhelming weight of authority in other jurisdictions accepts the characterization of statutes of repose as substantive provisions in a choice of law context. *See, e.g., Goad v. Celotex Corp.*, 831 F. 2d 508 (4th Cir. 1987); *Wayne v. Tennessee Valley Authority*, 730 F. 2d 392 (5th Cir. 1984), *cert. denied*, 469 U.S. 1159, 83 L.Ed. 2d 922 (1985); *President and Directors of Georgetown v. Madden*, 660 F. 2d 91 (4th Cir. 1981); *Pottratz v. Davis*, 588 F. Supp. 949 (D. Md. 1984); *Nieman v. Press & Equipment Sales Co.*, 588 F. Supp. 650 (S.D. Ohio 1984); *Harris v. Clinton Corn Processing Co.*, 360 N.W. 2d 812 (Iowa 1985). *But see Regents, Etc. v. Hartford Acc. and Idem. Co.*, 21 Cal. 3d 624, 581 P. 2d 197, 147 Cal. Rptr. 486 (1978).

[4] We hold that statutes of repose are treated as substantive provisions for choice of law purposes. This rule mandates the application of Florida's statute of repose to plaintiff's claims.[3] Upon so doing, we hold these claims are not time-barred.

In reaching the opposite conclusion, the Court of Appeals relied on a "public policy" exception. It is true we have held that

---

3. Because we rule in plaintiff's favor as to the applicability of the Florida statute of repose, we need not address plaintiff's assignments of error regarding the amendment of defendants' pleadings.

foreign law or rights based thereon will not be given effect or enforced if opposed to the settled public policy of the forum. *Davis v. Davis*, 269 N.C. 120, 152 S.E. 2d 306 (1967). However, the mere fact that the law of the forum differs from that of the other jurisdiction does not mean that the foreign statute is contrary to the public policy of the forum. *Bradford Electric Light Co. v. Clapper*, 286 U.S. 145, 76 L.Ed. 1026 (1932). To render foreign law unenforceable as contrary to public policy, it must violate some prevalent conception of good morals or fundamental principle of natural justice or involve injustice to the people of the forum state. *Ellison v. Hunsinger*, 237 N.C. 619, 75 S.E. 2d 884 (1953); *Howard v. Howard*, 200 N.C. 574, 158 S.E. 101. This public policy exception has generally been applied in cases such as those involving prohibited marriages, wagers, lotteries, racing, gaming, and the sale of liquor. *Howard v. Howard*, 200 N.C. 574, 158 S.E. 101. Needless to say, this is not such a case. We discern no injustice to the people of North Carolina in the application of Florida's statute of repose.

Having determined that the substantive law of Florida applies to plaintiff's claims and that plaintiff's action is not time-barred by the Florida statute of repose, we now turn to the question of whether plaintiff's case would otherwise survive summary judgment.

The North Carolina Rules of Civil Procedure, which as lex fori govern the procedural aspects of the case, provide that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). By making a motion for summary judgment, a defendant may force a plaintiff to produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial. *Dickens v. Puryear*, 302 N.C. 437, 276 S.E. 2d 325 (1981). The party moving for summary judgment has the burden of establishing the lack of any triable issue. *Caldwell v. Deese*, 288 N.C. 375, 218 S.E. 2d 379 (1975). The movant may meet this burden by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or can-

not surmount an affirmative defense which would bar the claim. *Bernick v. Jurden*, 306 N.C. 435, 293 S.E. 2d 405; *Dickens v. Puryear*, 302 N.C. 437, 276 S.E. 2d 325. All inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion. *Page v. Sloan*, 281 N.C. 697, 190 S.E. 2d 189 (1972).

The record reveals that model number 1183 is a bent plywood swivel-tilt tub-chair designed by defendants in 1967. The chair has a chrome veneer about one-sixteenth of an inch thick which is bonded to its plywood shell. The base of the chair upon which the "tub" portion tilts and swivels is somewhat recessed; the diameter of the base is about two inches less than the diameter of the tub. The bottom of the tub is about three inches off the floor.

Milo Baughman, the individual defendant, testified in his deposition that the chair was designed for residential use and that it is a natural assumption that people walk barefoot in their homes. Nonetheless, he never anticipated that someone might put his foot in the area between the back of the chair and the floor. He was familiar with the use of clear plastic welts known as "edge guards." These guards are used to protect the bottom edge of the metal on chrome-trimmed furniture. Model number 1183 was not designed with an edge guard because it did not seem necessary. Although it was technically feasible, it would have been alien to the visual concept of the chair to have placed a wood trim, molding, or cloth welt around the edge of the chrome veneer. If the chair were manufactured with the chrome veneer extending beyond the plywood, it would create a surface that would cut bare skin. This would be a dangerous condition. Number 1183 was specifically designed so that the plywood and chrome would be flush. This was not noted on the design drawing because it is so obvious. The drawings do not include all details: "I don't put in all the screws, I don't put in the dowels, I don't put in the mechanisms. . . . I don't specify things that are not my problems. These are done by the engineers in the plant."

A designer's role is to make a conceptual sketch, to provide a full-sized detail and working sketch, and to supervise the making of a model. The purpose of the supervision is to assure that the finished product looks right. The designer's responsibilities are

"aesthetic and not engineering." The manufacturer's inspectors occasionally "let something go through that isn't exactly right." In all factories some quality problems get through. Other than the present action, defendants have not received a single complaint of injury involving any of their furniture designs.

Julius Thayer Coggin, president of Thayer-Coggin, Inc., testified in his deposition that defendant Milo Baughman generally furnished Thayer-Coggin with a pencil sketch of the furniture design, as well as a working sketch which included the actual dimensions of the piece and specified the exterior material to be used. The chair in question was designed so that the veneer edge would be flush with the plywood and the edges of the veneer would be sanded down. Chrome veneer is sharp because it is thin. However, the chair was not designed to have sharp edges. A sharp edge is a manufacturing defect, not a design defect, and would be the responsibility of Thayer-Coggin. Nothing prevented the placement of a protective welt along the bottom of number 1183. Plastic edge guards have been added to similar tub-chairs in the last few years.

Luther Ray Cooper, plant supervisor at Thayer-Coggin, testified in his deposition that the purpose of an edge guard is to protect the metal on furniture rather than to prevent injury. Model number 1183 was designed to have the edges flush and sanded, not to have sharp edges. There will always be "a little sharp edge any time you're dealing with metal in this thickness." A sharp edge is a manufacturing defect.

Plaintiff testified in his deposition that he cut his bare foot on the "outside bottom edge of the chair where the base meets the sides," resulting in severe lacerations which required surgery and hospitalization. Plaintiff later examined the chair and determined that the edge was "razor sharp, sharp enough that if you were to rub your finger across the bottom outside edge of the chair, you would shave skin off your finger." The chrome was flush with the plywood but the edge was sharp all the way around the 360 degrees of the tub.

We now consider whether the forecast of evidence, viewed in the light most favorable to plaintiff, raised genuine issues of material fact with respect to the elements of each claim as defined by Florida law.

[5]   Under Florida law, the elements of negligence are (1) the existence of a duty recognized by law requiring the defendant to conform to a certain standard of conduct for the protection of others, including the plaintiff; (2) a breach of that duty; and (3) injury sustained as a proximate cause of the breach. *Tieder v. Little*, 502 So. 2d 923 (Fla. Dist. Ct. App. 1987), *review denied*, 511 So. 2d 298 (Fla. 1987); *Clark v. Boeing Co.*, 395 So. 2d 1226 (Fla. Dist. Ct. App. 1981); *Welsh v. Metropolitan Dade Cty.*, 366 So. 2d 518 (Fla. Dist. Ct. App. 1979), *cert. denied*, 378 So. 2d 347 (Fla. 1979).

A designer is under a duty to use reasonable care to design a product that is reasonably safe for its intended use and for other uses which are reasonably foreseeable. *Husky Industries v. Black*, 434 So. 2d 988 (Fla. Dist. Ct. App. 1983). The design of a product includes the plan, structure, choice of materials, and specifications. *Id.* The availability of an alternative design does not translate into a legal duty in products liability. An action is not maintainable merely because the design used was not the safest possible. *Id.* Nevertheless, evidence of alternate designs bears upon the question of a defendant's reasonable care. *Id.*

Courts should be cautious in granting summary judgment in negligence cases. *McCabe v. Walt Disney World Co.*, 350 So. 2d 814 (Fla. Dist. Ct. App. 1977). Where questions of negligence are close, any doubt should always be resolved in favor of a jury trial. *Id.* If the circumstances established by the record are susceptible of a reasonable inference which would allow recovery and also capable of an equally reasonable inference to the contrary, a jury question is presented. *Voelker v. Combined Ins. Co. of America*, 73 So. 2d 403 (Fla. 1954).

In the light most favorable to plaintiff, the record presents a genuine issue of material fact as to whether defendants breached the duty of reasonable care by specifying the use of chrome veneer, which is known to have a sharp edge, but failing to include some type of edge guard in the chair design.

The record also presents a genuine issue of material fact as to proximate cause. Defendants make much of the distinction between design defects and manufacturing defects. A design defect is an injury-producing hazard accompanying normal use of a product that was intentionally manufactured according to design. *Cas-*

*sisi v. Maytag Co.,* 396 So. 2d 1140 (Fla. Dist. Ct. App. 1981). A manufacturing defect, on the other hand, is caused by a miscarriage in the manufacturing process that produces an unintended result. *Id.* Defendants contend that a sharp edge on chrome veneer is solely a manufacturing defect and in this case constituted intervening negligence on the part of Thayer-Coggin.

Where both defendant and a third party are negligent but the third party's negligence is the sole proximate cause of injury, plaintiff cannot recover from defendant. *De la Concha v. Pinero,* 104 So. 2d 25 (Fla. 1958), *appeal dismissed,* 109 So. 2d 168 (Fla. 1959); *Pearce & Pearce v. Kroh Bros. Development Co.,* 474 So. 2d 369 (Fla. Dist. Ct. App. 1985).

However, if an intervening cause is reasonably foreseeable, it cannot insulate a defendant from all liability. *Rupp v. Bryant,* 417 So. 2d 658 (Fla. 1982); *see, e.g., Goode v. Walt Disney World Co.,* 425 So. 2d 1151 (Fla. Dist. Ct. App. 1982), *review denied,* 436 So. 2d 101 (Fla. 1983) (mother's negligent supervision of her child did not shield designer of theme park facilities from liability); *Leib v. City of Tampa,* 326 So. 2d 52 (Fla. Dist. Ct. App. 1976) (recklessness of speeding motorist did not shield designer of intersection from liability). *Cf. Detroit Marine Engineering, Inc. v. Maloy,* 419 So. 2d 687 (Fla. Dist. Ct. App. 1982) (boat manufacturer not insulated from liability simply because it relied on another company to manufacture the steering wheel at issue); *Caporale v. Raleigh Industries of America,* 382 So. 2d 849 (Fla. Dist. Ct. App. 1980) (bicycle manufacturer could not disclaim liability for injuries to ultimate purchaser simply because it relied on dealer to assemble product).

Proximate cause is generally an issue for jury determination unless it is so clear that reasonable men could not differ. *Helman v. Seaboard Coast Line R. Co.,* 349 So. 2d 1187 (Fla. 1977). We believe that evidence of the nature of the material used, coupled with the individual defendant's acknowledgment of the manufacturer's occasional lapses in quality, raised a jury question as to whether dangerously sharp edges were a reasonably foreseeable consequence of a design lacking an edge guard.

[6] Similarly we find that the forecast of evidence was sufficient to raise jury questions on the elements of strict liability. A plaintiff seeking to hold a defendant strictly liable in a products liabili-

ty case must establish: (1) the defendant's relationship to the product in question; (2) the defective condition of the product; and (3) the existence of a causal connection between the product's condition and plaintiff's injuries. *West v. Caterpillar Tractor Company*, 336 So. 2d 80 (Fla. 1976); *Clark v. Boeing Co.*, 395 So. 2d 1226 (Fla. Dist. Ct. App. 1981); *Sansing v. Firestone Tire & Rubber Co.*, 354 So. 2d 895 (Fla. Dist. Ct. App. 1978), *cert. denied*, 360 So. 2d 1250 (Fla. 1978). In addition to the above elements, the plaintiff must also establish that the defect existed both at the time of the injury and at the time the product left the hands of the manufacturer or seller. *Diversified Products Corp. v. Faxon*, 514 So. 2d 1161 (Fla. Dist. Ct. App. 1987); *Cassisi v. Maytag Co.*, 396 So. 2d 1140 (Fla. Dist. Ct. App. 1981).

Defendants reiterate many of the contentions previously considered and rejected with respect to the negligence claim. They also contend that plaintiff presented no evidence raising a reasonable inference that the chair was defective when it left the manufacturer. Defendants note their spotless record with respect to complaints of injury and theorize that any defect in the chair arose after many years of wear and tear.

We nonetheless find that the forecast of evidence was sufficient to support an inference in plaintiff's favor. Mere lapse of time between the purchase and the accident does not foreclose liability as a matter of law. *Marrillia v. Lyn Craft Boat Company*, 271 So. 2d 204 (Fla. Dist. Ct. App. 1973). Nor does evidence of safe use for a period of time. *Advance Chemical Co. v. Harter*, 478 So. 2d 444 (Fla. Dist. Ct. App. 1985), *review denied*, 488 So. 2d 829 (Fla. 1986). Defendants in products liability cases may not rely on their history of good fortune to exempt themselves from liability. *Id.* Lapse of time and a record of safety are simply circumstances to be considered in determining whether the product was defective when it left the control of the manufacturer or distributor. The weight of such evidence is for the trier of fact. *Cassisi v. Maytag Co.*, 396 So. 2d 1140 (Fla. Dist. Ct. App. 1981). Moreover, it is reasonable to infer that the type of defect alleged, a uniform razor-sharpness around the entire circumference of the tub edge, would not have arisen from use of the chair.

With respect to defendants' affirmative defenses, we note that contributory negligence does not constitute a bar to strict

liability or negligence actions in Florida, a comparative negligence state. *Cassisi v. Maytag Co.*, 396 So. 2d 1140, 1152 n.26; *Martinez v. Clark Equipment Co.*, 382 So. 2d 878 (Fla. Dist. Ct. App. 1980). We have already addressed intervening negligence of the manufacturer and statutes of repose. The record does not present adequate information upon which we may judge the other defenses. Therefore we find for the purpose of this opinion that defendants have not demonstrated plaintiff's inability to surmount the affirmative defenses.

[7] Lastly we consider the breach of warranty claims. By creating the strict liability cause of action, the Florida Supreme Court in *West v. Caterpillar Tractor Company*, 336 So. 2d 80, abolished the implied warranty cause of action in products liability cases where no privity exists. *Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37 (Fla. 1988). Where, as here, plaintiff has been injured by an allegedly defective product but has no contractual relationship with defendants, he may pursue a strict liability cause of action if appropriate but, absent privity, the vehicle of implied warranty is no longer available to him. *Id.; Affiliates for Evaluation v. Viasyn Corp.*, 500 So. 2d 688 (Fla. Dist. Ct. App. 1987).

Thus, we hold that summary judgment was properly granted for defendants as to plaintiff's claims for breach of implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose but was inappropriate on plaintiff's claims for negligence and strict liability.

The result is: The decision of the Court of Appeals is affirmed for different reasons as to the claims for breach of implied warranty. As to the claims for negligence and strict liability, the decision of the Court of Appeals is reversed and the cause remanded to that court for remand to the Superior Court, Forsyth County, for further proceedings not inconsistent with this opinion.

Reversed and remanded in part, modified and affirmed in part.

Justice WEBB dissenting.

I dissent from the majority. In determining the choice of law for the application of the statute of repose, the majority relies on

previous statements of this Court that statutes of repose are substantive definitions of rights. *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 302 S.E. 2d 868 (1983); *Bolick v. American Barmag Corp.*, 306 N.C. 364, 293 S.E. 2d 415 (1982). It is not necessary to question the validity of these statements to see we should not have a different treatment for statutes of limitation and statutes of repose in choice of law determinations.

Whatever differences we may find in statutes of limitation and statutes of repose, the purpose of both of them is to bar claims which are not filed within certain times. The majority has not said why there should be a different treatment of them because we call one statute substantive and the other procedural. I do not see why we should. The law of the forum applies when a statute of limitations is pled. *Sayer v. Henderson*, 225 N.C. 642, 35 S.E. 2d 875 (1945). By using a different choice of law for a statute of repose, I believe we are giving different treatment to statutes which were adopted for the same purpose. I do not believe we should do so.

I agree with the opinion written by Judge Parker for the Court of Appeals. The majority says that the Court of Appeals in reaching its decision "relied on a 'public policy' exception." The only time the Court of Appeals mentioned public policy was in quoting from an opinion of this Court, *Tieffenbrun v. Flannery*, 198 N.C. 397, 151 S.E. 857, 68 A.L.R. 210 (1930), which held that although the time limitation on the wrongful death action had been held to be a condition precedent to the action, the limitation also applied to an action brought in this state when the action was based on a death that occurred in Florida. *Tieffenbrun* comes close to governing this case.