DIETZ, Judge.
*538 Plaintiff John Doe 1K[1] sued the Roman Catholic Diocese of Charlotte for various tort claims stemming from sexual abuse allegedly committed by Father Kelleher, a Catholic priest affiliated with the Diocese, in 1977 and 1978. Doe concedes that he did not repress the memories of the abuse and has known of his injuries since they occurred.
*539 In 2011, more than 30 years after the alleged abuse, Doe sued the Diocese. His *920 complaint relied on legal theories involving fraud-in essence, that before the abuse occurred, the Diocese misrepresented that Doe would be safe and free from sexual abuse under the supervision and spiritual care of Father Kelleher. Doe relies on fraud-related claims because they are subject to the "discovery rule," which states that the statute of limitations does not begin to run until the plaintiff should have discovered the false statements in the exercise of reasonable diligence. Here, Doe argues that he could not have discovered that the Diocese lied to him until 2010, when Father Kelleher was arrested and other alleged victims came forward.
The trial court rejected this argument and entered summary judgment against Doe on the ground that his claims were barred by the statute of limitations. For the reasons discussed below, we agree. A plaintiff cannot rely on the discovery rule unless he has exercised reasonable diligence to discover the fraud. Here, Doe's theory of liability rests on the Diocese's false assurances in 1977 and 1978 that he would be safe with Father Kelleher. The very fact that Father Kelleher abused him, as Doe alleges, put him on notice that the Diocese's assurances may have been false. But Doe concedes that, after he reached the age of majority in 1980, he did not do anything to investigate the Diocese. Doe also concedes that the Diocese never concealed anything from him or misrepresented its actions to him after the fact-indeed, Doe never had any contact with the Diocese again after the alleged abuse.
Moreover, the record indicates that Doe knew many years before his lawsuit that the Diocese's alleged representations to him may have been false. For example, in 2006, Doe posted on an internet forum that he had been "molested" by a priest and wanted to "seek retribution from the catholic church." This undercuts Doe's claim that he had no reason to suspect the Diocese of wrongdoing, and to begin investigating his potential claims, until 2010 when he learned there were other victims of the same priest.
As a result, under settled North Carolina law, and consistent with every other state to address this issue, we hold that Doe's claims are barred by the statute of limitations because Doe did not exercise reasonable diligence in investigating them after being put on inquiry notice that the Diocese's representations to him may have been false. Accordingly, we affirm the trial court's entry of summary judgment.
*540 Facts and Procedural History
The following recitation of the facts relies on evidence that is either undisputed or is disputed but viewed in the light most favorable to Plaintiff as the party opposing the motion for summary judgment. See Dobson v. Harris, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000). We recognize that the Diocese disputes many of these facts, but we must accept them as true for purposes of summary judgment. Id. As explained below, however, even when all facts are viewed in the light most favorable to Plaintiff, he cannot overcome the Diocese's statute of limitations defense as a matter of law.
Sometime around 1977, Plaintiff John Doe 1K was fourteen years old and having difficulty adjusting after his family's recent move to North Carolina. Doe's grandmother suggested that he meet with Father Kelleher, a priest affiliated with the Roman Catholic Diocese of Charlotte. Doe met Kelleher alone in the rectory at Our Lady of the Annunciation in Albemarle. During Doe's second meeting with Kelleher, Kelleher told him to lie down on the floor. Kelleher then knelt down next to him. They discussed Doe's family problems and then Kelleher began rubbing Doe's chest, arms, and legs. Kelleher then unbuttoned Doe's pants and massaged Doe's penis.
Doe met with Kelleher for counseling seven or eight times over a six to eight month period in 1977, and Kelleher molested him during four to six of those meetings. The abuse continued until Doe's family moved to Winston-Salem in early 1978. Doe did not tell anyone about his sexual abuse by Kelleher at the time because he was "terrified and ashamed." After being sexually abused by Kelleher, Doe suffered from increased emotional problems, including depression and anxiety, for which he sought medical treatment and counseling.
*921 Although Doe did not report his abuse at the time, he testified that he always remembered the abuse and did not repress the memory. Doe also testified that no one employed by or speaking on behalf of the Church ever told him that he should not "speak up and report abuse by a priest."
In September 2005, Doe was hospitalized and reported "Physical/emotional/sexual abuse" by "father-priest." The hospital record notes that Doe reported the abuse "2 yrs. ago" to an "atty.," and the outcome was "statute ran out." At some point between 2005 and 2008, Doe contacted attorney Jeff Anderson in Minneapolis regarding possible civil claims against the Diocese. Anderson told Doe that "the statute of limitations had run out ... a long time ago."
*541 In March 2006, Doe posted on an internet message board maintained by Survivors Network of Those Abused by Priests, writing:
i am searching for any information regarding Fr Joseph Kelleher. i was repeatedly abused and molested by this priest from age 14-15. i am trying to find out how to expose his crimes, and seek retribution from the catholic church. i have been told the statute of limitations in NC is 7 years more or less. my abuse occurred in 1976-1977.
i am wondering if there are more victims and if there has been any actino [sic] taken against this guy.
Around the same time, Doe also conducted internet research on the statute of limitations for civil claims against Kelleher and the Diocese.
In his deposition, Doe testified that at the time he made the March 2006 Survivors Network post, he knew that he had been abused by Kelleher, that he had been damaged by the abuse, and that he wanted to seek retribution against Kelleher and the Diocese. He stated that the only reason he had not filed a lawsuit before 2006 was that the lawyer he contacted would not take his case. He further testified that neither the Diocese nor Father Kelleher had done anything to prevent him from filing a lawsuit.
On 10 September 2009, Doe reported his sexual abuse by Father Kelleher to the Albemarle Police Department. Doe testified that he made the decision to report his abuse to the police "impulsively" after a "personal epiphany" and that his decision was not prompted by any new information or advice. Law enforcement arrested Kelleher on 8 July 2010. Following news reports of Kelleher's arrest, other alleged victims came forward.
The day after he reported Father Kelleher to the police, Doe posted on a Survivors Network message board:
yesterday i started the process of filing charges in Albemarle, where the abuse occurred. i am now looking for an attorney to represent me. i know the statute of limitations has run out, but i intend to step forward and make it known what this f* * * did. i want him to pay in any way possible.
At oral argument, the parties informed the Court that Father Kelleher died in 2014, before he had been convicted of any charges.
*542 On 28 September 2011, two years after Doe first reported his abuse claims to police, Doe filed a complaint against the Diocese. On 26 July 2012, Doe filed an amended complaint, asserting claims for constructive fraud, breach of fiduciary duty, fraud, and fraudulent concealment.[2] Doe's claims alleged that the Diocese "took advantage of and abused" its "relationship[ ] of trust and confidence with [Doe]," violated its fiduciary duty to provide a "reasonably safe and secure environment," breached its "duty to warn and to disclose and protect [Doe] from sexual abuse and exploitation," and "made false representations to and concealed material facts" from Doe.
During discovery, Doe testified in a deposition that he was not aware of any "fact or piece of information that the Diocese knew and concealed from" him that, had he known, would have enabled him to file his lawsuit earlier. When asked, "Did the Diocese misrepresent *922 anything to you that caused you to delay in filing a lawsuit" and "Did the Diocese do or fail to do anything that caused you to delay in filing your lawsuit," Doe responded, "No." Doe testified that he "didn't interact with the Diocese whatsoever" after he was abused, and the Diocese had "no opportunity" to make misrepresentations to him after his alleged abuse. When asked why he delayed in investigating and filing his lawsuit against the Diocese, Doe stated, "there's really no way to tell why my brain worked that way."
On 20 December 2013, the Diocese filed a motion for summary judgment, arguing that Doe's claims accrued at the time he was abused, were tolled until he turned eighteen, and are now barred by the applicable statute of limitations. Doe argued in response that he could not reasonably have discovered his fraud- and misrepresentation-related claims against the Diocese until other alleged victims of Father Kelleher's abuse came forward. Doe also argued that equitable estoppel tolled the statute of limitations.
The trial court entered an order granting the Diocese's motion for summary judgment on 11 July 2014. In the same order, the trial court also granted several other motions brought by the Diocese to exclude evidence and testimony submitted by Doe, including the testimony of an expert on the Catholic Church who sought to testify about the Church's procedure and Canon law. Doe timely appealed the trial court's judgment.
*543 Analysis
I. Summary Judgment and Statute of Limitations
Doe argues that his claims are not barred by the statute of limitations. To address this argument, we must first address Doe's theory of liability against the Diocese.
All of Doe's claims against the Diocese are fraud-related or misrepresentation-related claims. The gist of Doe's claims is that the Diocese falsely represented that Doe would be safe and free from sexual abuse while under the supervision and spiritual care of Father Kelleher. Doe contends that the Diocese hid knowledge of Father Kelleher's abusive nature from him to protect the church and its interests.
Doe's fraud and misrepresentation legal theories are critical to his case because Doe concedes that he has known about Father Kelleher's alleged abuse-and his resulting injuries-since that abuse occurred nearly forty years ago. As a result, Doe relies entirely on claims that are subject to the "discovery rule" with regard to the running of the statute of limitations. Under the discovery rule, each of Doe's claims has a limitations period that begins to run when the plaintiff first becomes aware of facts and circumstances that would enable him to discover the defendant's wrongdoing in the exercise of due diligence. See Toomer v. Branch Banking & Trust Co., 171 N.C.App. 58, 66, 614 S.E.2d 328, 335 (2005).
Doe argues that "[a]t the time of the abuse in 1977 and 1978, Plaintiff was not aware of any evidence suggesting that ... the Diocese knew about and ignored Kelleher's pattern of abusing children." Doe contends that he did not discover this information until 2010, when other victims of abuse by Father Kelleher came forward. "Only then," according to Doe, "did Plaintiff become aware that Kelleher was a serial abuser with many victims."
Doe's argument fails because the record demonstrates the he was on inquiry notice nearly three decades before these other victims came forward, but failed to exercise reasonable diligence in investigating his own claim. Under the discovery rule, a plaintiff has a duty to exercise reasonable diligence to discover the fraud or misrepresentations that give rise to his claim. Forbis v. Neal, 361 N.C. 519, 525, 649 S.E.2d 382, 386 (2007). Doe argues that there is a special relationship between him and the Diocese and that he would never assume the church would lie to him. But under North Carolina law, even when there is a special relationship between the plaintiff and the defendant, the duty of inquiry begins *544 "when an event occurs to excite the aggrieved party's suspicion or put her on such inquiry as should have led, in the exercise of due diligence, to a discovery of the fraud." Id. *923 The alleged sexual abuse committed by Father Kelleher is the type of event that triggers this inquiry notice. As a number of other jurisdictions have acknowledged, when a plaintiff is abused by a priest affiliated with a particular diocese-as is the case here-that triggers the duty to investigate the diocese. See, e.g., Colosimo v. Roman Catholic Bishop of Salt Lake City, 156 P.3d 806, 811 (Utah 2007) ; see also Kelly v. Marcantonio, 187 F.3d 192, 200-01 (1st Cir.1999) ; Mark K. v. Roman Catholic Archbishop of Los Angeles, 67 Cal.App.4th 603, 612-13, 79 Cal.Rptr.2d 73 (Cal.Ct.App.1998) ; Cevenini v. Archbishop of Washington, 707 A.2d 768, 774-75 (D.C.1998) ; Doe v. Archdiocese of Cincinnati, 109 Ohio St.3d 491, 849 N.E.2d 268, 273-77 (2006) ; Baselice v. Franciscan Friars Assumption BVM Province, Inc., 879 A.2d 270, 277-79 (Pa.Super.Ct.2005). Put another way, because Doe's theory of liability rests on the Diocese's false assurances that he would be safe with Father Kelleher, the very fact that he was not safe put Doe on inquiry notice that the Diocese's representations may have been false.
Importantly, this is not a case where Doe asserts any fraudulent concealment by the Church to hide its wrongdoing after the fact. Other jurisdictions have recognized that fraudulent concealment precludes a claim that the victim failed to investigate his claims with reasonable diligence. See, e.g., Redwing v. Catholic Bishop for Diocese of Memphis, 363 S.W.3d 436, 463 (Tenn.2012). Here, however, Doe conceded under oath that the Diocese did not conceal any facts from him. In Doe's deposition testimony, when asked, "Did the Diocese misrepresent anything to you that caused you to delay in filing a lawsuit" and "Did the Diocese do or fail to do anything that caused you to delay in filing your lawsuit," Doe responded, "No." No other evidence in the record supports a claim of concealment; indeed, as explained below, Doe never had any contact with the Diocese following the alleged abuse. Thus, under settled statute of limitations precedent, Doe was on inquiry notice when he reached the age of majority and was required to take reasonable steps to investigate the representations made by the Diocese.
The record also establishes that Doe did not take reasonable steps to investigate his potential claims. Doe concedes that, after he reached the age of majority, he did not do anything to investigate the Diocese. Doe testified that he "didn't interact with the Diocese whatsoever" after he was abused. When Doe was asked why he did not investigate or pursue claims against the Diocese earlier, Doe stated, "there's really no way *545 to tell why my brain worked that way." Moreover, the record indicates that Doe knew many years before his lawsuit that the Diocese's alleged representations to him may have been false. For example, in 2006, Doe posted on an internet forum that he had been "molested" by a priest and wanted to "seek retribution from the catholic church." This undercuts Doe's claim that he had no reason to suspect the Diocese of wrongdoing until 2010 when he learned there were other victims of the same priest.
In sum, because Doe was on inquiry notice nearly three decades before filing suit, but did not take any reasonable steps to investigate his claims, the trial court correctly held that the statute of limitations barred Doe's claims as a matter of law.
Doe also argues that equitable estoppel prevents the Diocese from relying on the statute of limitations because the Diocese "engaged in extensive acts of concealment and misrepresentations of material facts ... so that victims ... would not bring civil suits against" it. We reject this argument because, as explained above, there is no evidence in the record that the Diocese concealed anything from Doe, or misrepresented anything to him, after his alleged abuse.
"In order for equitable estoppel to bar application of the statute of limitations, a plaintiff must have been induced to delay filing of the action by the misrepresentations of the defendant." A.H. Beck Found. Co., Inc. v. Jones Bros., Inc., 166 N.C.App. 672, 683, 603 S.E.2d 819, 826 (2004) (internal quotation marks omitted). But in Doe's deposition testimony, he stated that the Diocese did not misrepresent anything to him or conceal anything from him that caused him to delay in filing a lawsuit. Indeed, as explained *924 above, Doe testified that he "didn't interact with the Diocese whatsoever" after he was abused, and thus the Diocese had "no opportunity" to make misrepresentations to him in order to conceal their alleged wrongdoing. In light of Doe's own testimony, and the lack of any other record evidence of after-the-fact concealment or misrepresentations by the Diocese directed at Doe, the trial court did not err in rejecting this argument as a matter of law.
II. Evidentiary Rulings
Doe also argues that the trial court erred in granting the Diocese's motion to limit the testimony of Doe's expert witness and its motion in limine excluding other related evidence. We need not address these issues because the testimony and evidence Doe sought to admit does not relate to the issue of whether Doe exercised reasonable diligence in investigating his claims against the Diocese. As a result, the admission or exclusion of that evidence would not affect our holding that the trial *546 court properly entered summary judgment based on expiration of the statute of limitations. Accordingly, any error in these evidentiary rulings is harmless. See N.C. R. Civ. P. 61 (2014).
Conclusion
For the reasons discussed above, we hold that Doe's claims against the Roman Catholic Diocese of Charlotte are barred by the applicable statutes of limitations. Accordingly, we affirm the trial court's entry of summary judgment.
AFFIRMED.
Judges BRYANT and STEPHENS concur.

John Doe 1K is a pseudonym used by Plaintiff to protect his privacy. Joe Doe 2K, another plaintiff at the trial court level, is not a party to this appeal.

Doe's complaint also included claims for negligent supervision and retention, civil conspiracy, negligent infliction of emotional distress, and intentional infliction of emotional distress, but Doe subsequently abandoned these claims.