IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-823

Filed: 16 August 2016

Watauga County, No. 13 CVS 623

KB AIRCRAFT ACQUISITION, LLC, Plaintiff,

v.

JACK M. BERRY, JR., and 585 GOFORTH ROAD, LLC, Defendants.

Appeal by Plaintiff from order entered 6 February 2015 by Judge Richard L. Doughton in Watauga County Superior Court. Heard in the Court of Appeals 28 January 2016.

> *Smith, Debnam, Narron, Drake, Saintsing, & Myers, L.L.P., by Byron L. Saintsing, for Plaintiff-Appellant.*

> *Brooks, Pierce, McLendon, Humphrey, and Leonard, L.L.P., by John H. Small and Clint S. Morse, for Defendants-Appellees.*

INMAN, Judge.

KB Aircraft Acquisition, LLC ("Plaintiff") appeals from an Order and Summary Judgment in favor of Jack M. Berry, Jr. ("Defendant Berry") and 585 Goforth Road, LLC ("Defendant 585") (together, "Defendants") dismissing Plaintiff's claims for fraudulent transfer of property and declaratory relief.

This appeal presents two issues of first impression: (1) the interpretation of the term "transfer" in N.C. Gen. Stat. § 39-23.9 (2015), part of the North Carolina Uniform Voidable Transactions Act; and (2) whether the statute is one of limitations

or repose. We hold that the term "transfer" refers to the actual date on which an asset was transferred, rather than the date when its fraudulent nature became apparent to a creditor, and that the statute is one of repose. Accordingly, we hold that Plaintiff's claims are time-barred and affirm the trial court's Order and Summary Judgment.

## I. Factual and Procedural History

This dispute arises out of the transfer of real property located in North Carolina by Defendant Berry during a time when Defendant Berry was indebted as a guarantor on a loan to a business he owned.

Plaintiff is a Delaware limited liability company with its principal place of business in New York. Defendant Berry is a resident of Florida. Jurisdiction in North Carolina is proper because the property is located at 585 Goforth Road in Blowing Rock, North Carolina ("the Property").

Defendant Berry became indebted to Plaintiff in 2010 after Plaintiff purchased all rights in a loan from Key Equipment Finance, Inc. ("Key"), made to BerryAir, LLC ("BerryAir"), which was guaranteed by Defendant Berry. At the time Plaintiff purchased the loan, BerryAir and Defendant Berry were in default on their loan obligations.

In 2006, Key, Plaintiff's predecessor in interest, loaned $10,156,500.00 to BerryAir for the purchase of an airplane. Defendant Berry, on behalf of BerryAir,

executed a Promissory Note ("the Note") and an Airplane Security Agreement providing Key a security interest in a Bombardier Challenger 601-3A Aircraft purchased by BerryAir with the loan proceeds.

To provide further security for the loan, Defendant Berry signed a Personal Guaranty ("the Guaranty") stating that he "intend[ed] to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Obligations" of BerryAir under the loan. The Aircraft Security Agreement, in paragraph 2.11(b), provided that within 90 days after the last day of each year, BerryAir was required to provide to Key a copy of the personal financial statement for Defendant Berry regarding his financial condition during the prior year. At the time the loan was made, Defendant Berry's assets, which included the Property, were valued at more than $47 million. The majority of the assets were equity interests in various businesses. The Property, valued at more than $3 million, was Defendant Berry's largest real estate asset.[1]

By October 2008, BerryAir, as the debtor, and Defendant Berry, as the guarantor, had defaulted on the loan and were negotiating with Key to modify the loan repayment terms.

On 10 October 2008, Defendant Berry organized Defendant 585 as a limited liability company in Florida with Defendant Berry and his wife as its only members.

---

[1] We make note of this information from the record, although it is not material to our analysis, simply to provide additional context to Plaintiff's claims.

Defendant Berry transferred the Property to Defendant 585 by special warranty deed that same day. At the time, according to a personal financial statement later provided by Defendant Berry to Key, the Property was Defendant Berry's most valuable real estate asset and worth $4,250,626.00. No consideration was paid to Defendant Berry in the transfer. The deed stated on its face that "THIS TRANSACTION IS BETWEEN RELATED PARTIES AND THERE IS NO CONSIDERATION BEING PAID." The deed was recorded on 23 October 2008 in Book 1406, Page 196 of the Watauga County Register of Deeds. Neither Defendant Berry nor BerryAir provided actual notice to Key at the time of the transfer.

In November 2008, following negotiations with Key, Defendant Berry executed Amendment No. 1 to the Note on behalf of BerryAir, modifying the payment terms of the Note, along with a Confirmation of Guaranty. Both documents reaffirmed that there had been no interruption in the obligations of BerryAir and Defendant Berry under the terms of the Note and the Guaranty.

Despite the repayment modifications, BerryAir and Defendant Berry continued to default on the terms of the Note and the Guaranty throughout 2009 and the early months of 2010. Defendant Berry, on behalf of BerryAir as the debtor and on behalf of himself as the guarantor, continued negotiating with Key to resolve the payment defaults, ultimately entering into a Forbearance Agreement and eventually two Amendments to the Forbearance Agreement. The last of these agreements was

signed by Defendant Berry on 24 February 2010, over a year after he had transferred the Property. Each document ratified, reaffirmed, and confirmed all terms, conditions, rights, and obligations contained within the original loan documents, except as modified by the Forbearance Agreement. The final agreement extended the forbearance period until 6 August 2010.

In accordance with the terms of the Note, the Security Agreement, and related Amendments and Forbearance Agreements, Defendant Berry annually provided to Key a copy of his personal financial statements for the preceding year, no later than 90 days after the last day of the respective year. The financial statements were certified by Defendant Berry as true and accurate statements of his financial condition during the time specified.

The record on appeal does not include any of Defendant Berry's personal financial records provided to Key prior to 2008. On or about 7 November 2008, during negotiations for Key to forbear from taking action on the loan default and to modify the repayment terms, Defendant Berry submitted to Key a one-page personal financial statement listing his assets for the years 2004, 2005, 2006, 2007, and as of 30 June 2008. The statement listed the Property, described as "Blowing Rock House," and represented its value as $4,250,626.00. No evidence in the record indicates that Key requested a current personal financial statement or looked any further than the statement provided on or about 7 November 2008.

At some point in 2009,[2] Defendant Berry provided Key with a three-page personal financial statement for the period ending 31 December 2008, along with a one-page attachment. The first page of the statement listed Defendant Berry's real estate assets as being valued at $353,355.00. The attachment, a balance sheet, stated the Defendant Berry owned a 100% interest in Defendant 585 valued at $1,142,100.00. This document was inaccurate in one respect—Defendant Berry owned a 100% interest in Defendant 585 jointly with his wife.[3] This statement was also the first document of record provided to Key reflecting that Defendant Berry had transferred the Property and that Defendant Berry had an ownership interest in Defendant 585.

On 28 April 2010, Defendant Berry provided Key with his personal financial statement for the year ending 31 December 2009. The 2009 personal financial statement also reflected that Defendant Berry had transferred the Property, that the Property was owned by Defendant 585, and that Defendant Berry had an ownership interest in Defendant 585.

On or about 30 September 2010, Key sold and assigned to Plaintiff all of its right, title, and interest in and to the Note, the Guaranty, and all related loan

---

[2] The statement itself is undated, and the record includes only an undated letter from Defendant Berry's accountant transmitting this statement to Key. According to the loan parties' agreements and course of conduct, however, BerryAir was required to provide the statement in the first 90 days of 2009.

[3] The record includes no information regarding how the value of Defendant Berry's ownership interest in Defendant 585 was calculated.

documents. Plaintiff notified Defendant Berry of the assignment of his debt in a demand letter dated 4 October 2010.

Soon after demanding payment from BerryAir and Defendant Berry, Plaintiff filed suit against them in Florida for their failure to cure the longstanding default. In December 2010, a month after filing suit and two months after purchasing the loan from Key, Plaintiff conducted a title search on the Property which reflected that Defendant Berry had transferred it in 2008 to Defendant 585.

In July 2013, Plaintiff obtained a judgment for $10,577,895.90 against BerryAir and Defendant Berry in Florida. Plaintiff perfected a judgment lien in North Carolina which is enforceable against any real property owned by Defendant Berry in Watauga County. Plaintiff was unable to enforce the lien against the Property because, although it is in Watauga County, Defendant Berry no longer owned it.[4]

Plaintiff filed suit against Defendants in North Carolina on 2 December 2013, alleging a claim for fraudulent transfer pursuant to N.C. Gen. Stat. § 39-23.1 *et seq.* and a claim for declaratory relief. Plaintiff's complaint sought a judgment setting aside the conveyance of the Property to Defendant 585 and, in accordance with the statute, vesting the Property back into Defendant Berry's name and subject to Plaintiff's judgment lien. Defendants moved for summary judgment, arguing that

---

[4] Counsel advised this Court during oral argument that Plaintiff foreclosed on the airplane, resulting in a deficiency in excess of $10 million.

Plaintiff's claims were time barred because they were brought outside the relevant limitations periods allowed by the Uniform Voidable Transactions Act. Following a hearing in January 2015, Judge Richard L. Doughton entered an Order and Summary Judgment in Defendants' favor. Plaintiff timely appealed.

## II. Analysis

### A. <u>Standard of Review</u>

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). The trial court rules as a matter of law when granting a motion for summary judgment, and is not exercising its discretion. *Carr v. Great Lakes Carbon Corp.*, 49 N.C. App. 631, 633, 272 S.E.2d 374, 376 (1980).

> "A movant [for summary judgment] may meet its burden by showing either that: (1) an essential element of the non-movant's case is nonexistent; or (2) based upon discovery, the non-movant cannot produce evidence to support an essential element of its claim."

*McKinnon v. CV Indus., Inc.,* 213 N.C. App. 328, 332, 713 S.E.2d 495, 499 (2011) (quoting *Moore v. City of Creedmoor*, 120 N.C. App. 27, 36, 460 S.E.2d 899, 904 (1995)).

"When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001). "By moving for summary judgment, a defendant may force a plaintiff to produce evidence which shows plaintiff's ability to establish a *prima facie* case." *Moore v. F. Douglas Biddy Constr., Inc.*, 161 N.C. App. 87, 92, 587 S.E.2d 479, 483 (2003). When a defendant moves for summary judgment based on a statute of limitations or repose, "the burden is on the plaintiff to show that the action was instituted within the requisite period . . . ." *Marshburn v. Associated Indem. Corp.*, 84 N.C. App. 365, 368, 353 S.E.2d 123, 125 (1987).

## B. **Interpretation of "Transfer"**

The core issue in this appeal is the meaning of the term "transfer" in N.C. Gen. Stat. § 39-23.9, a statute which extinguishes claims for fraudulent transfers brought after a statutorily defined time period. The parties dispute whether the term "transfer" refers to the actual date that the transfer at issue occurred or, rather, the date that the fraudulent nature of the transfer became apparent to the creditor. This issue has not been addressed since our legislature enacted the Uniform Fraudulent Transfers Act, later renamed the Uniform Voidable Transactions Act ("UVTA"), as Article 3A of Chapter 39 of the North Carolina General Statutes nearly two decades ago.

Section 39-23.9 of the UVTA provides:

> A claim for relief with respect to a voidable transfer or obligation under this Article is extinguished unless action is brought:
>
> > (1) Under G.S. 39-23.4(a)(1), not later than four years after the transfer was made or the obligation was incurred or, if later, not later than one year after the transfer or obligation was or could reasonably have been discovered by the claimant;
> >
> > (2) Under G.S. 39-23.4(a)(2) or G.S. 39-23.5(a), not later than four years after the transfer was made or the obligation was incurred; or
> >
> > (3) Under G.S. 39-23.5(b), not later than one year after the transfer was made.

The UVTA defines "Transfer" as follows:

> Every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset and includes payment of money, release, lease, license, and creation of a lien or other encumbrance.

N.C. Gen. Stat. § 39-23.1(12) (2015). Starting with the word "every," this definition is all-inclusive. It does not limit its scope to transfers that are fraudulent or that appear to be fraudulent. Likewise, Section 39-23.9 uses the word "transfer" consistently without any modifying or qualifying terms. If the legislature had intended for the date triggering extinguishment of the claim to be anything other

than when "the transfer was made," it could have said so in the statute. Additionally, the word "fraudulent" appears nowhere in this statute.

Thus, the plain language of the statute indicates that the limitations period for all claims authorized by the UVTA begins to run at the time of the transfer upon which the claim is based, or from such point as the claimant should reasonably have known of the transfer. " 'Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give [the statute] its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein.' " *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 575, 573 S.E.2d 118, 121 (2002) (quoting *State v. Camp*, 286 N.C. 148, 152, 209 S.E.2d 754, 756 (1974)).

Our interpretation of the statute is consistent with the legislature's Comment when it was enacted:[5]

> The UFTA's limitations provisions *make some change* to the limitations period previously prescribed under North Carolina law. *Under prior law*, the limitations period applicable to fraudulent conveyances was three years *and the limitations period began to run as of the time when the fraud was known* or should have been discovered by the aggrieved party.

---

[5] Because we hold that the plain language of Section 39-23.9 is unambiguous, it is not necessary for us to resort to further canons of construction to determine the legislature's intent. However, because this is an issue of first impression, in the interest of completeness, we cite the Comment. North Carolina legislative history, such as its committee notes, is rarely held to be authoritative, but is often cited as some indication of the intent of the legislature. *See Savage v. Zelent*, __ N.C. App. __, __, 777 S.E.2d 801, 806 (2015); *see generally Parsons v. Jefferson-Pilot Corp.*, 333 N.C. 420, 425, 426 S.E.2d 685, 689 (1993); *Belk v. Belk*, 221 N.C. App. 1, 19, 728 S.E.2d 356, 367 (2012).

> . . . [Under the current law], [a]s to claims based on a transfer in which the debtor does not receive reasonably equivalent value, *the limitations period is four years from the date of transfer.*

N.C. Gen. Stat. § 39-23.9, North Carolina Cmt. (1997) (emphasis added) (citation omitted).

In conformity with the plain meaning of the statute, we hold that the term "transfer" within N.C. Gen. Stat. § 39-23.9 refers to the date that the transfer actually occurred, and not the date that the fraudulent nature of the transfer became apparent. The latter interpretation is inconsistent with the plain meaning of the statute.

Plaintiff argues that this case is controlled by *Cowart v. Whitley*, 39 N.C. App. 662, 664, 251 S.E.2d 627, 629 (1979), which held that the limitations period for bringing a fraudulent transfer claim began to run only when the claimant knew or should have known: (1) that the transfer had occurred, and (2) that the transfer was fraudulent. We disagree. *Cowart* involved a claim arising under N.G. Gen. Stat. § 39-15 (1997), the "prior law" referenced in the 1997 Comment to the current statute.

In urging this Court to follow *Cowart*, Plaintiff notes that the current N.C. Gen. Stat. § 39-23.10 (2015) provides that "the principles of law and equity" supplement the provisions of the UVTA. This argument is undermined by the introductory phrase in Section 39-23.10, "[u]nless displaced by the provisions of this Article[.]"

Plaintiff also urges this Court to consider the decisions of other jurisdictions that have applied the "discovery-of-the-fraud rule" to fraudulent transfer claims.[6] *See., e.g., Cortez v. Vogt,* 52 Cal. App. 4th 917, 931, 60 Cal. Rptr. 2d 841, 850 (1997) (holding that it would be impracticable to require a creditor to "bring suit to set aside a fraudulent transfer before the claim has matured"). Courts applying the discovery-of-the-fraud rule have reasoned that the statutes providing for relief from fraudulent transfers have no application to transfers that are not fraudulent, that often the event that makes the fraudulent nature of a transfer apparent is the acquisition of a judgment lien by the claimant, and that the claimant should not be "require[d] to maintain an action to annul a fraudulent conveyance before his debt has matured." *Id.* at 930, 60 Cal. Rptr. 2d at 849. *See also Fid. Nat'l Title Ins. Co. of N.Y. v. Howard Sav. Bank,* 436 F.3d 836, 840 (7th Cir. 2006) (holding that the liability of a third party transferee pursuant to the uniform statute "implies that the discovery statute of limitations does not begin to run until the plaintiff has discovered or should have

---

[6] In both its brief on appeal and oral argument, Plaintiff cited *Fed. Deposit Ins. Corp. v. Mingo Tribal Pres. Trust,* __ F. Supp. 2d __, 2015 WL 1646751, 2015 U.S. Dist. LEXIS 49777 (W.D.N.C. 2015). This decision is not binding on this Court. *Rose v. Vulcan Materials Co.,* 282 N.C. 643, 655, 194 S.E.2d 521, 530 (1973). In any event, it does not support Plaintiff's argument. The court in *Mingo* noted that the plaintiff's fraudulent transfer claim would not be disposed of at the pleadings stage, "as the Defendants apparently concede." __ F. Supp. 2d at __, 2015 WL 1646751, at *6, 2015 U.S. Dist. LEXIS 49777, at *17. The court referred to N.C. Gen. Stat. § 39-23.9 as a statute of limitations only in passing, with no discussion of the distinction between limitations and repose. *Id.* The court cited *Cowart,* but only for its holding that the recordation of a deed is insufficient to place a creditor on notice of a transfer for purposes of the statute of limitations on a fraudulent transfer claim. *Id.* The court did not mention the common law discovery rule. Instead, with regard to the term "transfer," the court determined that the statutory deadline to file claims ran from the date of the transfer or the date the creditor reasonably should have learned of the transfer. *Id.*

discovered not that money has been transferred illegally but that it has been transferred to someone who is a fraudulent transferee, for otherwise it is not a fraudulent transfer and the owner of the money has no claim against the transferee"). While the policy underlying this reasoning may be sound, in light of the plain language of the North Carolina statute, it must be addressed to our legislature rather than to this Court.

This Court is not the first to conclude that a frustrated claimant's plea for broader relief from a fraudulent transfer must be addressed to the legislative branch. In *National Auto Serv. Ctrs., Inc. v. F/R 550, LLC*, __ So. 3d __, __, 2016 Fla. App. LEXIS 4820, at *18 (Fla. Dist. Ct. App. 2016), the Florida Court of Appeals held that: (1) the Florida statutory period, with language identical to that in N.C. Gen. Stat. § 39-23.9, was triggered by the transfer at issue or the claimant's discovery of the transfer, without regard to whether the transfer was at that time fraudulent or discovered to be so; and (2) that the statute is one of repose rather than one of limitation. Acknowledging the plaintiff's argument that a more flexible time bar would better serve the legislative purpose of deterring fraud and protecting creditors, the Florida court explained that "[w]hen statutory text is unambiguous, 'courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent.' " *Id.* at __, 2016 Fla. App. LEXIS at *21 (quoting *Borden v. East-European Ins. Co.*, 921 So. 2d 587, 595 (Fla. 2006)). Chief

Judge Villanti wrote a separate concurring opinion to express "trepidation" that the statute as written would allow "the judgment debtor, having already actively engaged in fraud, [to] continue[] his or her fraudulent ways so as to hide any evidence that a given transfer was, in fact, fraudulent[,]" and to urge the Florida legislature to consider amending the statute. *Id.* at __, 2016 Fla. App. LEXIS at *39.

At least one state legislature has amended its statute to deviate from the Uniform Act in this respect. Arizona amended its statute in 1990 to provide that some claims based upon a fraudulent transfer are extinguished if not brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the fraudulent nature of the transfer or obligation was or through the exercise of reasonable diligence could have been discovered by the claimant." Ariz. Stat. § 44-1009(1) (2016). It appears that the Arizona legislature did not interpret the term "transfer" any differently than we do with respect to our statute, but added the words "the fraudulent nature of" to the discovery clause of the statute to broaden the protection for creditors.

## C. <u>Statute of Limitations or Repose</u>

A second issue of first impression presented in this case is whether N.C. Gen. Stat. § 39-23.9 functions as a statute of limitations or as a statute of repose. The function of Section 39-23.9, the language of the statute, and a comparison of this language to other statutes leads us to hold that it is a statute of repose.

A statute of limitations functions to limit the amount of time that a claimant has to file an action. *Tipton & Young Constr. Co. v. Blue Ridge Structure Co.*, 116 N.C. App. 115, 117, 446 S.E.2d 603, 604 (1994). The limitations period begins to run on the date the cause of action accrues, which is generally "the time of an injury or the discovery of the injury." *Id.* Statutes of limitation are purely procedural bars to the bringing of claims; they "affect only the remedy and not the right to recover." *Id.*

By contrast, statutes of repose function as more rigid stops. The time limitations imposed by statutes of repose are usually not measured from the accrual of the cause of action. *Boudreau v. Baughman*, 322 N.C. 331, 340, 368 S.E.2d 849, 856 (1988). Instead, they often run from the " 'defendant's last act giving rise to the claim.' " *Id.* (quoting *Trustee of Rowan Tech. v. Hammond Assoc.*, 313 N.C. 230, 234 n.3, 328 S.E.2d 274, 276-77 n.3 (1985)). While statutes of limitation are classified as affirmative defenses, a statute of repose need not be pled as an affirmative defense. *Whittaker v. Todd*, 176 N.C. App. 185, 187, 625 S.E.2d 860, 862 (2006). Rather, statutes of repose are more appropriately pled as a condition precedent to the bringing of an action at all. *Id.* This elemental nature makes the time span imposed by a statute of repose " 'so tied up with the underlying right that . . . the limitation clause is treated as a substantive rule of law.' " *Boudreau*, 322 N.C. at 341, 368 S.E.2d at 857 (quoting *Chartener v. Rice*, 270 F. Supp. 432, 436 (E.D.N.Y. 1967)).

" 'A statute which in itself creates a new liability, gives an action to enforce it unknown to the common law, and fixes the time within which that action may be commenced, is not a statute of limitations.' " *McCrater v. Stone & Webster Eng'g Corp.*, 248 N.C. 707, 709, 104 S.E.2d 858, 860 (1958) (quoting 34 Am. Jur., *Limitation of Actions* § 7). N.C. Gen. Stat. § 39-23, *et seq.*, like the workers compensation statute at issue in *McCrater*, crafted a new civil cause of action related to a wide variety of fraudulent transactions not previously recognized in North Carolina. Furthermore, the "common law" claim for fraudulent conveyance upon which Plaintiff relies was itself a creature of statute, dating back to 1966 and adopted from English Code.[7] N.C. Gen. Stat. § 39-23 (2015), Official Cmt.

Chapter 39, Article 3A of our General Statutes provides for the definition, cause of action, and procedure for which an individual may bring a claim for relief for a fraudulent transfer. Section 39-23.9 establishes a finite and fixed time within which the prescribed actions may be brought. Because Section 39-23.9 measures the time period in relation to an event separate from the realization of an injury by the claimant, the statute is one of repose.

---

[7] The law of fraudulent conveyances as we know it was first codified in 1570 as a number of Statutes of Elizabeth, and was later codified in 1966 by North Carolina, largely verbatim. N.C. Gen. Stat. §§ 39-15, 39-16, 39-19 (1966). For a detailed account of the history of claims against fraudulent conveyances, see E. Cader Howard, *The Law of Fraudulent Conveyances in North Carolina: An Analysis and Comparison with the Uniform Fraudulent Conveyances Act*, 50 N.C. L. Rev. 873 (1971).

" 'A statute of repose creates an additional element of the claim itself which must be satisfied in order for the claim to be maintained.' " *Goodman v. Holmes & McLaurin Attorneys at Law*, 192 N.C. App. 467, 474, 665 S.E.2d 526, 531 (2008) (quoting *Hargett v. Holland*, 337 N.C. 651, 654, 447 S.E.2d 784, 787 (1994)). " 'If the action is not brought within the specified period, the plaintiff literally has no cause of action. The harm that has been done is *damnum absque injuria* – a wrong for which the law affords no redress.' " *Id.* (quoting *Hargett*, 337 N.C. at 654, 447 S.E.2d at 787).

Because statutes of repose do not require an injury to begin running, a statute of repose can extinguish a cause of action before it accrues. In *Colony Hill Condo. I Ass'n. v. Colony Co.*, 70 N.C. App. 390, 391, 320 S.E.2d 273, 274 (1984), condominium owners sued after an allegedly defective prefabricated fireplace in one unit caused a fire which spread throughout the building, allegedly because the developers and builder failed to install firewalls between the units. The fire occurred in December 1979, approximately six years after the condominium was built, and the plaintiffs filed suit two years later, in 1981. *Id.* at 391, 393–94, 320 S.E.2d at 274, 276. This Court held that a six-year statute of repose began running before the plaintiffs even owned their condominiums and precluded any claim relating to the omission of firewalls brought after December 1979—the same month as the fire. The applicable statute, N.C. Gen. Stat. § 1-50(a)(5) (1963), provided that " '[n]o action . . . arising

out of the defective and unsafe condition of an improvement to real property . . . shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than six (6) years after the performance or furnishing of such services and construction.' " *Colony Hill Condo. I Ass'n.*, 70 N.C. App. at 393, 320 S.E.2d at 275 (quoting 1963 N.C. Sess. Laws c.1030). The Court reasoned that "[a] statute of repose, unlike an ordinary statute of limitations, defines substantive rights to bring an action[,]" and that "[o]nce the time limit on the plaintiffs' cause of action expired, the defendants were effectively 'cleared' of any wrongdoing or obligation." *Id.* at 394, 320 S.E.2d at 276. The Court sympathized "with the plaintiff condominium owners, who [found] that the statute of repose barred their claims even before injury occurred" but held that "we cannot let our sympathies lead us to construe the statute" to allow plaintiffs' claim. *Id.* The Court also held that a six-year statute of repose precluded any claim concerning the fireplace brought after September 1979 because the statute of repose for product liability, N.C. Gen. Stat. § 1-50(a)(6), provided that " '*[n]o action . . . based upon or arising out of any alleged defect or any failure in relation to a product* shall be brought more than six years after the date of initial purchase for use or consumption.' " *Colony Hill Condo. I Ass'n.*, 70 N.C. App. at 396, 320 S.E.2d at 277 (quoting N.C. Gen. Stat. § 1-50(6)). The fireplace was initially purchased no later than September 1973 by the condominium developer, prior to completion of

construction. *Id.* The plaintiffs in *Colony Hill*, like Plaintiff in this case, did not even own their condominiums at the time the limitations period began running.

As with claims for defective construction and product liability, injury from a fraudulent transfer may occur after the date when the limitations period begins to run, because the period is triggered by the transfer of a debtor's property, regardless of whether the creditor had a claim against the debtor at that time. In some cases, injury does not occur until the claimant has obtained an actual money judgment for which there are insufficient funds to satisfy.

The language of Section 39-23.9 is more consistent with one of repose than one of limitations. A claim for relief "is extinguished" if not commenced within the statutorily defined time period. The term "extinguished" denotes elimination of a claim, as opposed to merely barring a remedy. *See Nat'l Auto Serv. Ctrs.*, __ So. 3d at __, 2016 Fla. App. LEXIS 4820, at *28-29, and cases cited therein. As stated above, although other state court decisions are not controlling, their respective analyses may be persuasive when applied to statutes of identical or similar language, particularly with respect to uniform acts. Unif. Fraudulent Transfer Act § 9, 7A-2 U.L.A. 266, 359 cmt. (1999).

Here, Plaintiff contends that even if Section 39-23.9 is a statute of repose, the time period should be extended based upon courts' inherent authority to do equity,

specifically equitable tolling when the period of repose is asserted by a defendant who has made a fraudulent transfer. We disagree.

Plaintiff quotes the holding in *Wood v. BD&A Constr. L.L.C.,* 166 N.C. App. 216, 220, 601 S.E.2d 311, 314 (2004), that "[e]quitable estoppel may also defeat a defendant's statute of repose defense." This quotation is taken out of context. *Wood* involved a claim for defective construction governed by a specific statute of repose, N.C. Gen. Stat. § 1-50(a)(5) (2015). That statute provides that no action to recover damages for defective construction shall be brought more than six years after the last act of the defendant giving rise to the claim or substantial completion of the construction, whichever is later. N.C. Gen. Stat. § 1-50(a)(5)(a). However, unlike Section 39-23.9, the statute of repose at issue in *Wood* also contains an express exception that the limitation period "shall not be asserted as a defense" by any person who has engaged in fraud, willful or wanton negligence, or wrongful concealment. N.C. Gen. Stat. § 1-50(a)(5)(e).

In the absence of a specific statutory exception such as that in Section 1-50(a)(5), " 'equitable doctrines do not toll statutes of repose.' " *Goodman*, 192 N.C. App. at 475, 665 S.E.2d at 532 (quoting *State ex rel Long v. Petree Stockton, L.L.P.*, 129 N.C. App. 432, 445, 499 S.E.2d 790, 798 (1998)). In *Goodman*, the plaintiff argued that *Wood* required the trial court to apply equitable estoppel to toll the statute of repose for a legal malpractice claim. *Id.* at 474, 665 S.E.2d at 531. In rejecting the

argument, we noted that the statute of repose governing legal malpractice claims, N.C. Gen. Stat. § 1-15(c), contains no exception comparable to the statute at issue in *Wood*. *Id.*, 665 S.E.2d at 532. Accordingly, "[t]his Court has consistently refused to apply equitable doctrines to estop a defendant from asserting a statute of repose defense in the legal malpractice context . . . ." *Goodman*, 192 N.C. App. at 474-75, 665 S.E.2d at 532.

We hold that Section 39-23.9 is a statute of repose and includes no language creating an exception for equitable doctrines, thereby precluding equitable remedies such as equitable tolling, and limiting Plaintiff's arguments on appeal to those founded in law.

## D. **Applying the Statute**

Plaintiff's first cause of action alleges fraudulent transfer in violation of two separate subsections of the UVTA: N.C. Gen. Stat. § 39-23.4(a)(1) (2015), which creates a cause of action for transfers or obligations voidable as to present or future creditors, and N.C. Gen. Stat. § 39-23.5(a) (2015), which creates a cause of action for transfers or obligations voidable as to present creditors.

Claims allowed by N.C. Gen. Stat. § 39-23.4(a)(1), regarding transfers voidable as to present or future creditors, are extinguished if not brought within four years after the transfer was made. N.C. Gen. Stat. § 39-23.9(1)-(2). This section also includes a "savings clause" providing that an action is not extinguished if brought

within one year after the complaining party discovered the transfer or could have reasonably discovered it. *Id*. This section applies only to a debtor who acts "[w]ith the intent to hinder, delay, or defraud any creditor . . . ." N.C. Gen. Stat. § 39-23.4(a)(1).

Claims allowed by N.C. Gen. Stat. § 39-23.5(a), regarding transfers voidable as to present creditors, regardless of whether the debtor acted with intent, are extinguished if not brought within four years from when the transfer was made, without a savings clause. N.C. Gen. Stat. § 39-23.9(2).

All of Plaintiff's claims are barred by the applicable statute of repose because they arise from a transfer occurring more than four years prior to the filing of the complaint and because Plaintiff had notice of the transfer more than one year prior to filing the complaint.

It is undisputed that Defendant Berry transferred title in the Property to Defendant 585 on 10 October 2008, when Defendant Berry was indebted to Key. Therefore, Plaintiff's claims derived from Key and arising under Section 39-23.5(a) were extinguished because they were not brought before 10 October 2012. Plaintiff's direct claims arising under Section 39-23.4(a)(1) were extinguished either on that date or at the latest—because of the savings clause—within one year from the date Plaintiff discovered or reasonably could have discovered the transfer.

Plaintiff purchased the loan from its predecessor in interest, Key, in September 2010 and reasonably should have known about the transfer of the Property before that date. Basic due diligence would have revealed that Defendant Berry—the only personal guarantor of the loan who was in default at the time Plaintiff bought the loan—did not have sufficient real estate assets to cover the loan obligation and had transferred his most valuable real estate asset at a time when the loan was in default. A cursory comparison of Defendant Berry's 2008 and 2009 personal financial statements would have revealed the transfer of the Property two years earlier.

Finally, Plaintiff conducted a title search of Defendant Berry's property in December 2010, more than two months after purchasing the loan. The title search report explicitly showed that Defendant Berry had transferred the Property to Defendant 585 two years earlier, in 2008. The latest possible time when Plaintiff knew or reasonably should have known of the transfer of the Property was December 2010. Thus, the extra one year provided by the savings clause in Section 39-23.9(1) for claims arising under Section 39-23.4(a)(1) expired in December 2011, two years before Plaintiff brought the present action.

Plaintiff argues that it retains a cause of action under Section 39-23.4(a)(1) because it learned of the fraudulent nature of the transfer upon receipt of the judgment lien on the Note on 31 July 2013. This argument is unpersuasive.

The deed reported in the December 2010 title search stated on its face that Defendant Berry transferred the Property to a related party for no consideration. Accordingly, the title search put Plaintiff on notice that Defendant Berry had not only transferred the Property, but that he had transferred it in violation of creditors' rights actionable under the UVTA.[8] In other words, the title search should have put Plaintiff on notice of the alleged fraudulent nature of the transfer. Thus, even if we agreed with Plaintiff's interpretation of the one-year "savings clause" in the applicable statute of repose, it could not save Plaintiff's claims, which were brought two years after this discovery.

Plaintiff, in opposing Defendants' motion for summary judgment, had the burden of demonstrating when it reasonably could have discovered the transfer, or at least demonstrating that there was a material issue of fact regarding whether that discovery date was less than one year prior to the filing of the lawsuit. Plaintiff offered no evidence to the trial court and no argument to this Court that could satisfy this burden.

"[A] plaintiff has a duty to exercise reasonable diligence to discover the fraud or misrepresentations that give rise to [its] claim." *Doe v. Roman Catholic Diocese of*

---

[8] Defendants deny the transfer was fraudulent for two reasons: (1) that Defendant Berry was not rendered insolvent as a result of the transfer; and (2) that he transferred the property for estate planning purposes. However, it is not necessary that a defendant admit to the existence of all elements of the claim for the plaintiff to have notice of the claim. The merits of Plaintiff's claims are not before this Court.

*Charlotte, N.C.*, __ N.C. App. __, __, 775 S.E.2d 918, 922 (2015). " '[W]hen an event occurs to excite the aggrieved party's suspicion or put [it] on such inquiry as should have led, in the exercise of due diligence, to a discovery of the fraud,' " that party is deemed to have inquiry notice of the same. *Id.* at __, 775 S.E.2d at 922 (quoting *Forbis v. Neal*, 361 N.C. 519, 525, 649 S.E.2d 382, 386 (2007)). The information contained in Defendant Berry's personal financial statements was enough to cause a reasonable person with an interest in the Property to inquire further into its present status and to ultimately discover the alleged fraudulent nature of the transfer, *i.e.*, that the transfer was made when Defendant Berry was indebted to Key. The deed reflected in the title search was unequivocal evidence of the alleged fraudulent nature of the transfer. Therefore, even if this Court were to agree with Plaintiff's interpretation of the word "transfer," Plaintiff's claims would be time barred.

Plaintiff's claims are time barred by the statute of repose. The statute operates as a condition precedent to Plaintiff's claims, and by bringing a claim outside of the statute of repose, Plaintiff has failed to adequately establish its *prima facie* case. All Plaintiff's claims were brought later than four years from the date of the transfer upon which they are based and later than one year from when Plaintiff knew or reasonably should have known that the transfer had occurred.

### III. Conclusion

For the foregoing reasons, we affirm the trial court's Order and Summary Judgment granting Defendants' motion for summary judgment as a matter of law.

AFFIRMED.

Judges STEPHENS and HUNTER, JR. concur.